**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GRASSHOPPER NATURAL MEDICINE, LLC, and
BRANDON TAYLOR, individually,

       Plaintiffs,

vs.                                No. CIV 15-0338 JB/CEG

THE HARTFORD CASUALTY
INSURANCE COMPANY,

       Defendant.

## <u>MEMORANDUM OPINION</u>[1]

**THIS MATTER** comes before the Court on Hartford's Motion to Dismiss Counts V and

VI of Plaintiffs' Amended Complaint, filed April 30, 2015 (Doc. 4)("Motion").  The Court held

a hearing on August 18, 2015.  The primary issues are: (i) whether New Mexico recognizes an

independent cause of action, apart from bad faith, for an insurer's "breach of fiduciary duty" in

the insurance context; (ii) whether, if New Mexico recognizes such a cause of action, Plaintiffs

Grasshopper Natural Medicine, LLC and Brandon Taylor allege sufficient factual allegations to

establish a fiduciary duty; and (iii) whether the Court should dismiss the Plaintiffs' negligence

and professional negligence claim (Count VI), because New Mexico does not recognize a cause

of action for negligence or professional negligence against an insurance company.  The Court

will grant the Motion.  First, the Court has already denied the Plaintiffs' Motion to Remand, so

the Plaintiffs' request that the Court refrain from deciding the Motion until it determines whether

---

[1]The Court issued an Order, filed March 31, 2016 (Doc. 47)("Order"), granting Hartford's Motion to Dismiss Counts V and VI of Plaintiffs' Amended Complaint, filed April 30, 2015 (Doc. 4), stating that it would "at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion and Order is the promised opinion.

it retains subject-matter jurisdiction is moot.  Second, because The Hartford removed this case to federal court, the Court must apply Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)(collectively, "Iqbal/Twombly")'s federal pleading standards -- rather than New Mexico state-law pleading standards -- to the Complaint.  Further, the Court will deny the Plaintiffs' request to amend their Complaint at this time.  That denial does not preclude them, however, from filing a motion asking the Court for leave to amend their Complaint at a future date, although the Court concludes that amendment would likely be futile.  Third, while the Court concludes that under New Mexico law, the relationship between insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to performance of an insurance contract, no cause of action, independent of the action for bad faith, exists for breach of this duty.  Accordingly, the Court will dismiss the Plaintiffs' breach-of-fiduciary-duty claim (Count V).  Finally, the Court concludes that New Mexico does not recognize a cause of action for negligence or professional negligence against an insurance company.  The Court will therefore dismiss the Plaintiffs' negligence and professional negligence claim (Count VI).

## **FACTUAL BACKGROUND**

The Court takes its facts from the First Amended Complaint for Declaratory Judgment, Insurance Bad Faith and Related Causes of Action, filed in state court March 13, 2015, filed in federal court April 23, 2015 (Doc. 1-1 at 29)("Complaint"), as it must at the motion-to-dismiss stage, see Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

1.      **The Parties.**

"Plaintiff, Grasshopper Natural Medicine is a duly registered LLC,[2] doing business in Santa Fe County, New Mexico."  Complaint ¶ 1, at 1.  "Plaintiff Brandon Taylor is the owner of Grasshopper Natural Medicine, LLC[.]"  Complaint ¶ 2, at 1.  "Plaintiff, individually, is also the owner of the building where Grasshopper, is located."  Complaint ¶ 3, at 1.

"Mr. Taylor is not a lawyer."  Complaint ¶ 9, at 2.  "The business relationship between Mr. Taylor individually and Grasshopper is a formal one, due to the existence of a lease agreement between Mr. Taylor and Grasshopper for the lease of the building located at 1348 Pacheco St. Suite 206, Santa Fe, New Mexico."  Complaint ¶ 4, at 2.  "Upon information and belief, Defendant The Hartford Casualty Insurance Company ("Hartford"), is a foreign corporation, doing business in New Mexico."  Complaint ¶ 5, at 2.

_____

[2]The Hartford's Notice of Removal notes that "Defendant Hartford Casualty Insurance Company is an Indiana corporation with a principal place of business in Connecticut."  Notice of Removal ¶ 4, at 2, filed April 23, 2015 (Doc. 1)("Notice of Removal").  Accordingly, for purposes of determining whether diversity jurisdiction exists in this case, The Hartford is a citizen of Indiana and Connecticut.  With respect to the Plaintiffs' citizenship, the Notice of Removal alleges that Grasshopper Medicine "is a New Mexico limited liability company doing business in Santa, Fe, New Mexico[.]"  Notice of Removal at ¶ 4, at 2.  The Notice of Removal does not, however, indicate the individuals or entities that are members of the Grasshopper Medicine LLC.  The Complaint confirms that Grasshopper Medicine is a registered LLC doing business in New Mexico, see Complaint ¶ 1, at 1, but like the Notice of Removal, it does not explicitly identify the individuals or entities that are members of the Grasshopper Medicine LLC.  The Complaint states, however, that "Plaintiff Brandon Taylor is the owner of Grasshopper Natural Medicine, LLC."  Complaint ¶ 2, at 1.  The Court construes this statement as indicating that Grasshopper Medicine is a single-member LLC consisting of Taylor as the LLC's sole member, and neither party has indicated otherwise.  With respect to Taylor, the Notice of Removal states that he is "upon information and belief, a citizen and resident of the State of New Mexico."  Notice of Removal ¶ 4, at 2.  Accordingly, Grasshopper Medicine and Taylor are, for the purposes of diversity jurisdiction, citizens of New Mexico.  As stated above, The Hartford is a citizen of Indiana and Connecticut.  Complete diversity therefore exists in this case.  As the Court will explain in its Memorandum Opinion setting forth its rationale for denying the Plaintiffs' Motion to Remand, see Order, filed March 30, 2016 (Doc. 46)("Motion to Remand Order"), the amount in controversy requirement is also satisfied here.  The Court thus concludes that diversity jurisdiction exists and the Court retains subject-matter jurisdiction over this lawsuit.

2. __The Events Giving Rise to the Litigation__.

Grasshopper Medicine is a "Natural/Holistic medical provider that specializes in providing medical services such as therapeutic massage, Oriental Medicine, acupuncture, and herbal prescriptions, to its New Mexico patients."  Complaint ¶ 8, at 2.  "In 2009, Grasshopper had an insurance policy through Hartford (Policy No. 65 SBA NW9053)."  Complaint ¶ 10, at 2. Grasshopper Medicine was the named insured for that policy.  See Complaint ¶ 11, at 2.

"Mr. Taylor, individually, as Grasshopper's landlord with a valid lease agreement between himself and Grasshopper, should have also been covered as an insured under Grasshopper's general liability coverage."  Complaint ¶ 12, at 2.  "Upon information and belief, that policy included, inter alia, originally workers compensation insurance for Plaintiff." Complaint ¶ 13, at 2.  "In 2009 Plaintiff, Grasshopper, advised Hartford that its mailing address had changed from 204 N. Guadalupe St. Suite C, Santa Fe NM 87501 to 1348 Pacheco St. Suite 206 Santa Fe, NM 87505."  Complaint ¶ 14, at 3.

"On July 15, 2009, Hartford sent Grasshopper a 'POLICY CHANGE' endorsement acknowledging this new mailing address change."  Complaint ¶ 15, at 3.  "On July 15, 2010, Hartford sent Grasshopper a second 'POLICY CHANGE' endorsement acknowledging this mailing address change."  Complaint ¶ 16, at 3.  "In the 2010-2011 timeframe, Grasshopper paid premiums for, inter alia, worker's compensation coverage as part of the policy it purchased from Hartford."  Complaint ¶ 17, at 3.

"Despite having twice acknowledged Grasshopper's correct mailing address, and unbeknownst to Plaintiffs, in 2011 Defendant sent Grasshopper's renewal papers for the workers' compensation coverage to the wrong address."  Complaint ¶ 18, at 3.  "Hartford never followed up with a phone call or letter to the correct mailing address for Plaintiffs advising of the

need to renew the workers' compensation policy, prior to its lapse."  Complaint ¶ 19, at 3.

"Because of Hartford's negligence, Grasshopper's worker's compensation policy lapsed."

Complaint ¶ 20, at 3.

"As part of the underwriting process, at all material times, Hartford had in its possession

an 'audit form' in which Plaintiff Grasshopper disclosed that it had more than three (3)

employees."  Complaint ¶ 21, at 3.  "Plaintiff was surprised when he received the cancellation

letter f[ro]m Hartford so he called the insurance company and spoke with a Hartford Employee."

Complaint ¶ 22, at 4.

> Hartford's employee told Mr. Taylor that it was his fault the policy was cancelled
> because he failed to timely renew the policy, despite the fact that Hartford sent the
> renewal letter to the wrong address, and failed to timely send the renewal to the
> correct address, and failed to otherwise advise Mr. Taylor that the renewal was
> due.

Complaint ¶ 23, at 3.

> Hartford told Mr. Taylor that he could renew his workers' compensation coverage
> but that he could only do so at an increased charge, and that Hartford would not
> provide coverage, retroactively, for the "gap" in coverage it had caused due to its
> failure to mail the renewal to the correct address.

Complaint ¶ 24, at 4.

> At this time, Mr. Taylor told Hartford he was not satisfied with its position, or
> customer service and that it was his belief that he did not need workers'
> compensation coverage because Grasshopper did not have the requisite number of
> employees to be required to carry workers' compensation coverage under New
> Mexico law.

Complaint ¶ 25, at 4.

> "Mr. Taylor's belief on this issue was incorrect."  Complaint ¶ 26, at 4.

> However, Defendant Hartford had in its possession an 'audit form' detailing the
> number of employees Grasshopper had, and despite the fact that Hartford had
> superior knowledge to Mr. Taylor on the issue of how many employees were
> needed to trigger the requirement to carry workers' compensation insurance,

Defendant Hartford failed to tell Mr. Taylor that he needed such coverage to be in compliance with New Mexico law.

Complaint ¶ 26, at 4.  "On December 10, 2013, Ms. Rose Gardner-Rael alleged she suffered a slip and fall accident on the Grasshopper premises."  Complaint ¶ 27, at 5.  "At that time, Ms. Rose-Gardner-Rael was an employee of Grasshopper."  Complaint ¶ 28, at 5.  "During the December 10, 2013, timeframe, Grasshopper had a business liability insurance policy with Defendant Hartford, Policy No. 65 SBA ZR3068."  Complaint ¶ 29, at 5.  "The general business liability coverage was provided pursuant to the Business Liability Coverage form SS008 0405."  Complaint ¶ 29, at 5.

"Mr. Taylor and Grasshopper subsequently tendered the claim to Hartford."  Complaint ¶ 30, at 5.  "Hartford denied Mr. Taylor's claim on the basis that, *inter alia*, he individually was not an additional insured under the policy."  Complaint ¶ 31, at 5.  "Hartford denied Grasshopper's claim, inter alia, on the basis that it did not have workers' compensation coverage at the time of the policy, and therefore a workers' compensation exclusion on the general liability policy applied to bar coverage."  Complaint ¶ 32, at 5.

"The Hartford did this despite the fact that the reason Grasshopper did not have such coverage was due to the Hartford's negligence, as described above."  Complaint ¶ 33, at 5.  "On June 26, 2014, Rose Gardner-Rael filed a lawsuit in state court, against Grasshopper and Mr. Taylor for her alleged slip and fall accident."  Complaint ¶ 34, at 5.  "During at least one telephonic phone call with Hartford regarding Ms. Rose Gardner-Rael's claims, Mr. Taylor specifically asked the Hartford not to assist the Plaintiff in anyway with regard to her claims against Ms. Taylor and/or his company Grasshopper."  Complaint ¶ 28, at 5.

"In other words, Mr. Taylor specifically asked the Hartford not to help Plaintiff sue him better."  Complaint ¶ 35, at 5.  "The Hartford's adjuster told Mr. Taylor that it would not provide

assistance to Ms. Rose Rael." Complaint ¶ 36, at 6. "Subsequently, Mr. Taylor wanted to avoid a situation where he, individually, would be without coverage in the event a plaintiff sued him for an accident occurring on the Grasshopper premises." Complaint ¶ 36, at 6.

"Mr. Taylor contacted the Hartford and asked whether he needed to purchase additional insurance or submit additional documents in order to become an additional insured under Grasshopper's policy with the Hartford." Complaint ¶ 37, at 6. "At that time, the Hartford's employee asked for, and Mr. Taylor provided, his lease agreement with Grasshopper to Hartford." Complaint ¶ 38, at 6. "The Hartford's employee then told Mr. Taylor that 'of course' he did not have to do anything to be covered under the existing Grasshopper policy, because as a landlord, he was automatically an additional insured." Complaint ¶ 38, at 6.

"At that time, Ms. Gardner-Rael had not filed any claim or lawsuit with the New Mexico Worker's Compensation Administration related to her alleged slip and fall on Grasshopper's premises." Complaint ¶ 39, at 6. "To date, the Hartford has never defended, or indemnified Mr. Taylor against Ms. Rose Gardner-Rael's claims." Complaint ¶ 40, at 6. "To date, the Hartford has never defended or indemnified Grasshopper against Ms. Rose Rael-Gardner's claims." Complaint ¶ 41, at 6.

"Prior to October 10, 2014, the Hartford never sought any declaratory judgment asking a New Mexico Court to determine whether there was coverage either for Grasshopper or Mr. Taylor." Complaint ¶ 42, at 6. "On October 10, 2014, Ms. Gardner-Rael filed an amended complaint in state court naming the Hartford as a party to her slip and fall lawsuit and seeking a coverage determination on the workers' compensation exclusion issue." Complaint ¶ 43, at 7. "Ms. Gardner-Rael's amended complaint did not add Mr. Taylor or Grasshopper as a party to the coverage issue." Complaint ¶ 44, at 7.

"On December 1, 2014, the Hartford filed its answer and counterclaim to Ms. Gardner-Rael's Amended Complaint."  Complaint ¶ 45, at 7.  "The Hartford's counterclaim on this purported coverage issue was asserted solely against Ms. Rose Gardner-Rael, and did not include Plaintiffs as a party."  Complaint ¶ 46, at 7.  "The Hartford has attempted to obtain a coverage determination adverse to the interests of its insured, Grasshopper, and additional insured, Mr. Taylor, without naming Plaintiffs as a party to that action."  Complaint ¶ 47, at 7.

"At the time the Hartford filed is answer and counterclaim, it had the assistance of New Mexico counsel."  Complaint ¶ 48, at 7.  "Specifically, The Hartford was represented by Todd A. Schwarz, from Miller Stratvert P.A., . . . at all material times, and [Mr. Schwarz] is currently representing it with regard to Plaintiff Rael's alleged slip and fall claims."  Complaint ¶ 49, at 7.  "The Hartford's 'counterclaim' against Ms. Gardner-Rael went even further than merely attempting to extinguish Ms. Rael's alleged claims."  Complaint ¶ 51, at 8.

"In its Counterclaim, the Hartford expressly asserted that 'Ms. Rael has the right to pursue her claims [against Grasshopper] under the New Mexico Worker's Compensation Act for her injuries."  Complaint ¶ 51, at 8 (brackets in Complaint).  "The Hartford's 'counterclaim' against Ms. Gardner-Rael further asserts: 'Ms. Rael can seek recovery from the New Mexico Uninsured Employers' Fund, even if her employer did not carry workers' compensation coverage.'"  Complaint ¶ 52, at 8.  "The Hartford's 'counterclaim' against Ms. Gardner-Rael further asserts: 'Ms. Rael's slip and fall and resulting injuries are excluded under The Policy because the injury occurred on the job, and therefore, Ms. Rael's employer, Grasshopper Natural Medicine, is liable under New Mexico workers' compensation laws.'"  Complaint ¶ 53, at 8.

"The Hartford's helpful legal advice, as articulated through its counsel Todd Schwarz, in its 'counterclaim' was for Ms. Gardner-Rael to leave the Hartford alone and go file an additional

lawsuit against its own insureds."  Complaint ¶ 54, at 8.  "This is exactly what Mr. Taylor asked The Hartford not to do, and exactly what the Hartford's employee promised it would not do." Complaint ¶ 54, at 8.[3]  "On January 8, 2015, Ms. Gardner-Rael followed the Hartford's friendly and helpful legal advice and filed a second lawsuit against Grasshopper in the New Mexico Workers' Compensation Administration, adding the New Mexico Uninsured Employer's Fund as a party."  Complaint ¶ 56, at 9.

"NMSA 1978, § 52-1-9.1 empowers the New Mexico Uninsured Employers' Fund to penalize an employer who fails to have workers compensation insurance, and seek subrogation against an employer for any money paid to an alleged injured worker out of the Fund." Complaint ¶ 57, at 9.[4]  "On February 6, 2015, The Hartford doubled down on its prior breaches of fiduciary duty and bad faith when it filed a Motion for Summary Judgment on Plaintiff Rael's coverage claims."  Complaint ¶ 58, at 9.  "In that pleading, The Hartford again affirmatively stated that 'Ms. Rael, therefore, has the right to pursue claims under the Workers' Compensation Act, NMSA §§ 52-1-*1, et seq.'"  Complaint ¶ 59, at 9.

"The Hartford further stated its legal opinions, which were adverse to the interests of its insured that "Clearly, physical injuries resulting from on-the job slip and fall are compensable under the Workers' Compensation Act."  Complaint ¶ 60, at 9.

---

[3]The Complaint states: "In giving Ms. Gardner-Rael helpful legal advice on how and where to sue its insureds better, the Hartford put its own interests above that of its insureds." Complaint ¶ 55, at 8.  Whether Hartford Insurance put its own interests above that of its insureds, however, is a legal, rather than a factual, question.  The Court will address that issue in its analysis rather than treating the allegation as a factual statement.

[4]The Complaint states: "NMSA 1978, § 52-1-9.1 empowers the New Mexico Uninsured Employers' Fund to penalize an employer who fails to have workers compensation insurance, and seek subrogation against an employer for any money paid to an alleged injured worker out of the Fund."  Complaint ¶ 57, at 9.  While this statement is a legal conclusion, the Court has examined N.M. Stat. Ann. § 52-1-9.1 and concludes that it is an accurate statement of law.  The Court therefore includes it in this Memorandum Opinion's factual background section.

The Hartford further provided a roadmap, and additional helpful legal advice, for Plaintiff Rael to pursue against its insured when it stated that "However, regardless of whether her employer purchased workers' compensation coverage, she has rights to recover under the Workers' Compensation Act if Grasshopper employers more than three workers.  NMSA § 52-1-2.  If Grasshopper did not purchase workers' compensation coverage, then it would not be allowed to avail itself of certain protections afforded to employers who purchase workers' compensation coverage.  NMSA § 42-1-8(C).  Moreover, Ms. Rael could seek recovery under the New Mexico Uninsured Employer's Fund, if Grasshopper did not have workers' compensation coverage."

Complaint ¶ 61, at 9-10.

The Hartford retained Mr. Schwarz, and his firm, who are presumably competent New Mexico counsel regarding insurance bad faith.  See Complaint ¶ 62, at 10.[5]  By virtue of retaining Mr. Schwarz, and his firm, The Hartford's acts of giving Gardner-Rael helpful and timely legal advice can only be interpreted as intentional acts.  See Complaint ¶ 64, at 10.[6]  "In

---

[5]The Court accepts as true that the Hartford retained Mr. Schwarz, and his firm, who are presumably competent New Mexico counsel regarding insurance bad faith.  The Complaint also states, however, that, by retaining Mr. Schwarz and his firm, "the Hartford knew it had fiduciary duties to its insured when it filed the above referenced pleadings."  Complaint ¶ 62, at 10.  This statement is a legal conclusion, and the Court will determine, if necessary, whether The Hartford owed fiduciary duties to its insured in its analysis.  The Complaint also states that The Hartford "knew, by virtue of its retention of Mr. Schwarz, and his firm, that it had a duty not to put its own interests above those of its insured."  Complaint ¶ 63, at 10.  Whether The Hartford had a duty not to put its own interests above those of its insured, however, is a legal conclusion, which the Court will address, if necessary, in its analysis.

[6]The Complaint also states: "By virtue of retaining Mr. Schwarz, and his firm, the Hartford's acts of giving Gardner-Rael helpful legal advice can only be interpreted as **intentional acts**, by the Hartford to breach its fiduciary duties to Plaintiffs and place the Hartford's interests above that of its own insureds."  Complaint ¶ 64, at 10 (emphasis in original).  As stated in footnote 4, whether The Hartford owed fiduciary duties to the Plaintiffs, whether, if it did, it breached them, and whether it placed its own interests above that of its own insureds, are legal questions, which the Court will determine in its analysis, if necessary.  While the Court accepts as true that The Harford and its New Mexico counsel intentionally provided Gardner-Rael helpful and timely legal advice, it also concludes that the following statement from the Complaint regarding the impact of this advice constitutes a legal conclusion: "In giving Ms. Gardner-Rael helpful legal advice, through its New Mexico counsel, the Hartford has acted willfully, intentionally, and in bad faith against the interests of its insureds in an all-out effort to

giving Ms. Gardner-Rael helpful and timely legal advice, the Hartford, and its New Mexico counsel, have exposed the Hartford's insureds to additional penalties, and arguably even made admissions that Ms. Gardner-Rael has a compensable workers' compensation claim."  Complaint ¶ 65, at 10.  "In giving Ms. Gardner-Rael helpful legal advice, the Hartford, and its New Mexico Counsel, have exposed its insureds to the potential of parallel litigation in both state court and the New Mexico Workers' Compensation Administration."  Complaint ¶ 66, at 10.

## PROCEDURAL BACKGROUND

The Plaintiffs filed suit in state court, naming The Hartford as the Defendant, and alleging state-law causes of action for: (i) "Breach of Contract Breach of the Duty of Good Faith and Fair Dealing" (Count I), Complaint ¶¶ 68-75, at 11-12; (ii) "Insurance Bad Faith" (Count II), Complaint ¶¶ 76-92, at 12-13; (iii) "Unfair Insurance Claims Practices" (Count III), Complaint ¶¶ 93-96, at 13-14; (iv) "Unfair Trade Practices" (Count IV),[7] Complaint ¶¶ 97-101, at 14; (v) "Breach of Fiduciary Duty" (Count V), Complaint ¶¶ 102-111, at 14-16; and (vi) "Negligence and Professional Negligence" (Count VI), Complaint ¶¶ 112-118, at 16-17.  The Hartford removed the case to federal court based on diversity jurisdiction.  See Notice of Removal, filed April 23, 2015 (Doc. 1)("Notice of Removal").  The Hartford asserts that each of the Plaintiffs is a New Mexico citizen, and that The Hartford is incorporated in Indiana with its principal place of business in Connecticut.  See Notice of Removal ¶ 4, at 2.

The Hartford contends that "a reasonable estimate of the amount that will be put at issue in the course of litigation will exceed $75,000.00, exclusive of interests and costs."  Notice of Removal ¶ 5, at 2 (footnote omitted).  The Hartford argues that, in this case, the Plaintiffs seek:

_____

protect its own interests."  Complaint ¶ 67, at 10.  The Court will determine this question in its analysis, if necessary.

[7]The Plaintiffs assert their "Unfair Trade Practices" claim (Count IV) pursuant to the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-2 to 58-12-10 ("UTPA").

(i) to compel Hartford Insurance to defend and indemnify them against the underlying tort and workers' compensation suits, including payment of bodily injury and/or workers' compensation benefits and reimbursement of defense costs; (ii) compensatory damages for breach of contract, breach of the implied duty of good faith and fair dealing, common-law bad faith, violation of the Unfair Claims Practice Act,[8] breach of fiduciary duty, negligence, and professional negligence; (iii) punitive damages; (iv) treble damages; and (v) attorney's fees incurred in defense of the underlying tort and workers' compensation lawsuits, and in this action.  See Notice of Removal ¶ 8, at 3-4.

      **1.**      **The Motion.**

      The Hartford filed the Motion on April 30, 2015.  See Motion at 1.  The Hartford first argues that the Court should dismiss the Plaintiffs' breach-of-fiduciary-duty claim (Count V) for two reasons: (i) the Plaintiffs have not alleged the existence of a fiduciary duty; and (ii) New Mexico law does not recognize a breach of fiduciary duty claim independent of a bad-faith claim.  See Motion at 4.  On point one, The Hartford contends that, under New Mexico law, a fiduciary relationship exists "when special confidence has been placed in one party who in equity and good conscience is bound to act in good faith and with due regard to the interests of the other party."  Motion at 4 (citing Azar v. Prudential Ins. Co., 2003-NMCA-062, ¶ 54, 68 P.3d 909, 926).  According to The Hartford, that it insured Grasshopper Medicine, does not create a fiduciary relationship between the Plaintiffs and The Hartford that can support a bad-faith claim.  See Motion at 4.  The Hartford contends that fiduciary obligations arise only where a party is "bound to act" on another's behalf and that "the fiduciary duty of an insurer is based on its

---

      [8]The Court assumes that when The Hartford here refers to the "Unfair Claims Practice Act," it is referring to the Plaintiffs' claim for Unfair Insurance Claims Practices (Count III) asserted pursuant to New Mexico's Unfair Insurance Practices Act, N.M. Stat. Ann. § 59A-16-20 ("UIPA").

exclusive control and obligations in matters pertaining to the performance of the insurance contract."  Motion at 4-5.

According to The Hartford, in Chavez v. Chenoweth, 1976-NMCA-076, 553 P.2d 703, the Court of Appeals of New Mexico "defined the narrow situations in which a fiduciary relationship is created between an insurer and its insured in the insurance context."  Motion at 5. The Hartford contends:

> An insurer may owe fiduciary obligations (1) where the insurer, by the terms of the policy, had the power to decide whether to accept or reject offers of compromise; (2) where the insurer acted on behalf of the insured in settlement or litigation of claims; and (3) where the insurer gave advice to the insured not to hire counsel and to instead communicate with insurer.

Motion at 5 (citing Chavez v. Chenoweth,1976-NMCA-076, ¶ 43, 553 P.2d at 711).   The Hartford asserts that the "Plaintiffs' factual allegations in support of Count V do not fall within these narrow categories."  Motion at 5 (citing Chavez v. Chenoweth,1976-NMCA-076, ¶ 43, 553 P.2d at 711).  The Hartford maintains that: (i) the Plaintiffs have not alleged that The Hartford had the power to decide whether to accept or reject offers of compromise; (ii) the Plaintiffs have not alleged that The Hartford acted on the insured's behalf in settlement or litigation of claims; and (iii) the Plaintiffs have not alleged that The Hartford gave advice to the insured not to hire counsel and to instead communicate with The Hartford.  See Motion at 6.  The Hartford further asserts:

> Moreover, the allegation that Hartford's allegedly negligent acts led to the non-renewal of Grasshopper's workers' compensation insurance constitutes conduct that is wholly unrelated to Hartford's performance of an obligation under the Policy or any actions taken by Hartford on behalf of Plaintiffs and in which Hartford had exclusive control.  As the New Mexico Court of Appeals holds, "we decline to acknowledge the existence of the insurer's fiduciary duty before the issuance of the policy."  Azar, 2003-NMCA-062, ¶ 56.   Accordingly, New Mexico expressly does not recognize a fiduciary obligation where an insured asserts wrongful conduct in the formation of a policy.

Because Count V of Plaintiffs' Amended Complaint fails to plead conduct that falls within the narrow category of conduct in which a fiduciary duty *may* arise, Count V of Plaintiffs' Amended Complaint should be dismissed for failure to state a claim.

Motion at 6 (emphasis in Motion).

The Hartford's second point in support of its contention that the Court should dismiss the breach-of-fiduciary-duty claim is that, even if the Plaintiffs have alleged sufficient factual allegations to establish a fiduciary duty, "it is well-settled that New Mexico law does not recognize *a cause of action* for breach of a fiduciary duty in the insurance context independent of a bad faith claim." Motion at 6 (citing N.M.R.A., Civ. UJI 13-1708)(emphasis in Motion). According to The Hartford, the committee commentary to N.M.R.A., Civ. UJI 13-1708 states: "While the relationship between insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to the performance of an insurance contract, no cause of action, apart from bad faith, exists for the breach of this duty." Motion at 6-7 (quoting N.M.R.A., Civ. UJI 13-1708 cmt.). The Hartford therefore asserts that, to the extent that the Plaintiffs' allegations establish that The Hartford breached a fiduciary duty owed to the Plaintiffs, they "do not have a separate *cause of action* because any such claim is encompassed in Plaintiffs' bad faith cause of action (Count II)." Motion at 7. The Hartford asks the Court to dismiss with prejudice Count V of the Plaintiffs' Complaint on this additional basis for failure to state a claim upon which relief can be granted. See Motion at 7.

The Hartford next asks the Court to dismiss with prejudice the Plaintiffs' Count VI -- negligence and professional negligence -- for failure to state a claim upon which relief can be granted, because New Mexico does not recognize a cause of action for ordinary negligence in the insurance context. See Motion at 7. The Hartford contends that the Plaintiffs' negligence claim "is premised upon the same allegedly wrongful conduct Plaintiffs assert in support of their

- 14 -

contract, bad faith, and statutory causes of action."   Motion at 7 (emphasis in original).

According to The Hartford, however, New Mexico does not "afford Plaintiffs a negligence cause

of action in the insurer-insured context that arises out of their contractual relationship."  Motion

at 7.  The Hartford maintains that the Uniform Jury Instructions governing bad-faith claims in

New Mexico indicate that there is no cause of action for ordinary negligence in the insurance

context.  See Motion at 7.  The Hartford argues that this principle is unsurprising given that New

Mexico has long followed the rule that "the difference between a tort and a contract claim is that

a breach of contract is a failure of performance of a duty arising [from] or imposed by

agreement; whereas, a tort is a violation of a duty imposed by law."  Motion at 7-8 (quoting

Kreischer v. Armijo, 1994-NMCA-118, ¶ 6, 884 P.2d 827, 829)(brackets in original).

The Hartford asserts that, in this case, the only duties owed to the Plaintiffs arose solely

from the insurance contact and New Mexico law.  See Motion at 8.  It contends that their

negligence claim is duplicative of their breach-of-contract and bad-faith claims, and that "[t]he

fact Plaintiffs have couched this claim in negligence terms does not change the true nature of the

claim."  Motion at 8.  The Hartford maintains that, when Grasshopper Medicine and The

Hartford entered into an insurance contract, it created a legal relationship, and the insurance

contract delineated the rights, duties, and obligations owed by and between them.  See Motion at

8.  There is no reason, in fact or law, The Hartford insists, to impose additional duties beyond

those that the insurance contract requires or that arise as a matter of New Mexico law.  See

Motion at 8.  The Hartford writes:

> Indeed, the notions of freedom of contract and contractually assumed
> duties and liabilities *can* act to limit general tort liability.  *See State ex rel. Udall
> v. Colonial Penn Ins. Co.*, 1991-NMSC-048, 112 N.M. 123, 812 P.2d 777.  New
> Mexico courts have diligently guarded the freedom to contract and often have
> prioritized protection of that freedom above other weighty countervailing public
> policy considerations.  The insurance contract itself and New Mexico law provide

an adequate remedy to Plaintiffs in the event Hartford is found to have breached the contract. Limiting the theories of liability by which Plaintiffs may recover in this case to those recognized by New Mexico law does not prejudice Plaintiffs in any way.

In conclusion, the gist of Plaintiffs' claim against Hartford is the alleged failure to defend and indemnify Plaintiffs in Rael's tort suit. The relationship between the parties and the duties that Plaintiffs claim have been breached are both created and limited by the insurance contract and applicable New Mexico law. Plaintiffs' damages are limited to the economic loss arising from the alleged breach of the insurance contract and damages recognized in New Mexico in the bad faith context.

Motion at 8-9 (footnote omitted).

## 2. The Response.

The Plaintiffs responded on June 1, 2015. See Plaintiff's Response to Defendant's Motion to Dismiss Counts V and VI, filed June 1, 2015 (Doc. 12)("Response"). The Plaintiffs first argue that the Court should refrain from deciding the merits of the Motion until it determines whether the Court has subject-matter jurisdiction. See Response at 4. The Plaintiffs assert that they have filed the Plaintiff's Motion to Remand, filed March 30, 2016 (Doc. 6)("Motion to Remand"), that will be fully briefed immediately, and that, if the Court determines that it lacks diversity jurisdiction to hear this action, it should refrain from ruling on the Motion. See Response at 4. The Plaintiffs contend that "[t]he issue of whether the Hartford had an obligation to step up and defend/indemnify Plaintiffs against the Rael's claims in state court will be important to the valuation of Plaintiffs' bad faith claims against the Hartford." Response at 4. According to the Plaintiffs, "[i]n state court, The Hartford has asked Judge Singleton[9] to make a determination on the coverage issue of whether the Raels' claims should have been covered under the policy" and they have asked the Court to dismiss two of the Plaintiffs' claims in

_____

[9]The Honorable Sarah M. Singleton, district judge in the First Judicial District of New Mexico, is presiding over the Rael Lawsuit.

federal court.  Response at 4.  The Plaintiffs posit that it is especially true that the Court should refrain from ruling on the Motion in this case, because The Hartford is "asking two separate courts to make determinations on the merits that could lead to inconsistent verdicts."  Response at 4.  The Plaintiffs further explain:

> As will be more fully briefed in Plaintiffs' Reply in support of his Motion to remand by virtue of filing its motion to amend to add Plaintiffs as a party to the coverage dispute and Motion for Summary Judgment on that issue, the Hartford has invoked state court jurisdiction and has waived its right to litigate this case in federal court.  "Waiver occurs when a defendant manifest[s] an intent to litigate in the state court."  Heafitz v. Interfirst Bank of Dallas, 711 F. Supp. 92, 97 (S.D.N.Y. 1989); Scholz v. RDV Sports, Inc., 821 F. Supp. 1469, 1470 (M.D. Fla. 1993)(stating that a defendant waives its right to remove by proceeding to defend the action in state court or otherwise invoking the process of the state court).  This Court should not decide the merits of Defendant's Motion to Dismiss when it is engaging in procedural jousting by virtue of asking a state court, and this court, to determine the merits of Plaintiffs' claims.

Response at 4-5.

The Plaintiffs next argue that, if the Court determines that it retains subject-matter jurisdiction over this action, it should grant the Plaintiffs leave to amend their Complaint, instead of dismissing any claims on the merits at this early stage.  See Response at 5.  The Plaintiffs assert that they prepared their Complaint for state court, under state court pleading standards rather than under Iqbal/Twombly's pleading standards, and that they contemplated litigation under those state court standards.  See Response at 5.  The Plaintiffs further assert:

> New Mexico state courts have expressly rejected application of the Iqbal/Twombley pleading standards to complaints filed in New Mexico District Courts.  See Madrid [v. Village of Chama], 2012-NMCA-071, ¶ 17, 283 P.3d 871 (expressly declining to adopt federal court pleading standards and apply them to Rule 1-012(B)(6) NMRA motions to dismiss).  Rather, in New Mexico, state courts accept all well pleaded facts as true, and resolve all doubts in favor of sufficiency of the complaint, without applying any additional "plausibility" pleading standard as in federal court.  See id. ¶ 18.  No discovery has taken place in this case.  Plaintiffs have not had an opportunity to develop facts which may lay the foundation for a special relationship between Plaintiffs and Defendant, which may form the basis for either breach of fiduciary duty or negligence claims

- 17 -

> against Defendants.  Before this Court decides any of Plaintiffs' claims on the merits at the pleading phase, Plaintiffs should be given the opportunity to amend their Complaint to allege sufficient facts consistent with federal pleading standards.

Response at 5-6.

The Plaintiffs next argue that The Hartford's Motion fails on the merits.  <u>See</u> Response at 6.  The Plaintiffs first attack The Hartford's argument that they have not alleged the existence of a fiduciary duty.  <u>See</u> Response at 6.  They contend that The Hartford "had a fiduciary duty to Plaintiffs due to the relationship between the insurer and the insured which placed a fiduciary obligation on the Hartford to deal with Plaintiffs in good faith in matters pertaining to the performance of the insurance contract."  Response at 6 (citing <u>Allsup's Convenience Stores, Inc.</u> <u>v. The North River Ins. Co.</u>, 1999-NMSC-006, ¶ 37, 976 P.2d 1, 15).  The Plaintiffs maintain that The Hartford cites to <u>Chavez v. Chenoweth</u>

> for the proposition that the only facts that can give rise to a fiduciary relationship are facts that go to whether (1) where the insurer, by the terms of the policy, had the power to decide whether to accept or reject offers of compromise, (2) where the insurer acted on behalf of the insured in settlement or litigation of claims; and (3) where the insurer gave advice to the insured not to hire legal counsel and to instead communicate with the insured.

Response at 6 (citing Motion at 5-6).  The Plaintiffs posit that The Hartford incorrectly argues that, because the Plaintiffs' claims do not fall within these three scenarios, the Plaintiffs' claims must fail.  <u>See</u> Response at 6.

The Plaintiffs argue, however, that in <u>Azar v. Prudential Insurance Co. of America</u>, the Court of Appeals of New Mexico "recognized that the fiduciary of an insurer is broader, and actually encompasses 'matters pertaining to the performance of obligations in the insurance contract.'"  Response at 6-7 (quoting in <u>Azar v. Prudential Ins. Co. of America</u>, 2003-NMCA-062, ¶ 54, 68 P.3d at 925-26).  The Plaintiffs further argue that "the UIPA does not pre-empt the

common law claims because UIPA was never intended to be an exclusive remedy for conduct prohibited in the Act."  Response at 7 (citing New Mexico Life Ins. Guar. Ass'n v. Quinn & Co., 1991-NMSC-036, ¶ 36, 809 P.2d 1278, 1290).  The Plaintiffs further assert:

> In this case, a fiduciary duty existed between Plaintiffs and Defendant on "matters pertaining to the performance of obligations in the insurance contract" as defined by New Mexico law.  Plaintiffs, during the adjusting phase of their claim, had a legal duty to cooperate with Defendant, as their insurer.  See e.g., United Nuclear Corp., v. Mission Ins. Co., 1982-NMCA-023, ¶ 51, 97 N.M. 647 ("An insured has an implied duty to cooperate with its insurer in any loss covered under the policy.")(internal citation and quotation marks omitted).  During that phase Plaintiffs shared information with Defendant as alleged in the Complaint, including that the Rael plaintiffs had not filed any workers' compensation claim against Plaintiffs, and specifically asked Defendant not to give the Rael plaintiffs any information that would help them sue Plaintiffs in Workers' Compensation.  See Complaint; Motion to Dismiss at 5.  Defendant then took that information, obtained during its adjusting of Plaintiffs' claim, and shared it with the Rael plaintiffs by virtue of including allegations in its counterclaim and summary judgment pleadings, that the Rael plaintiffs could still pursue claims against Plaintiff in the New Mexico Workers' Compensation Administration.  Shortly thereafter, and roughly one month prior to the expiration of the statute of limitations on the Rael plaintiff's indemnity benefits under the Workers' Compensation Act, they in fact did file a lawsuit in the WCA against Plaintiffs. These facts, because they are tied to matters pertaining to the insurance contract, which necessarily includes adjusting a claim, are sufficient as a matter of law to give rise to a common law fiduciary duty between Defendant and Plaintiffs.

Response at 7-8.

The Plaintiffs also attack The Hartford's argument that the Court should dismiss the Plaintiffs' negligence claim.  See Response at 8.  The Plaintiffs argue that The Hartford "relies heavily on the committee commentary under UJI 3-1708 for the proposition that there is no cause of action independent of the Act."  See Response at 8.  According to the Plaintiffs, however, "New Mexico case law is clear that 'committee comments to UJIs are not the law of New Mexico.'"  Response at 8.  The Plaintiffs contend that, as with fiduciary duties, "[t]he existence of a duty is a question of policy to be determined with reference to legal precedent,

statutes, and other principles comprising the law."  Response at 8 (quoting Edward C. v. City of

Albuquerque, 2010 NMSC-043, ¶ 14, 241 P.3d 1086, 1098).  They further argue that:

> In this case, the Plaintiffs allege that Defendant breached duties of
> ordinary care to Plaintiffs in failing to send workers' compensation insurance
> policy renewals to the correct address (causing the policy to be cancelled), failing
> to advise Plaintiffs that they needed workers compensation insurance when
> discussions occurred regarding the erroneous policy cancellation, and Defendant's
> conduct in providing helpful legal advice to the Rael Plaintiffs during the
> adjusting of their claim all could form the basis for a negligence claims.  See
> Allsup's Convenience Stores, Inc., 1999-NMSC-006, ¶ 35, (citing with approval
> Sears Mortgage Corp. v. Rose, 134 N.J. 326, 634 A.2d 74, 86 (N.J. 1993) for the
> proposition that an insurance company has an "obligation to disclose unprotected
> risks" to its insured).

Response at 8.

### 3.    The Reply.

The Hartford replied on June 15, 2015.  See Reply in Support of Defendant's Motion to

Dismiss Counts V and VI, filed June 15, 2015 (Doc. 16)("Reply").  The Hartford first asserts that

it did not waive its right to litigate the current lawsuit in federal court.  See Reply at 2.  The

Hartford argues that "[w]aiver may affect a defendant that removes a case to federal court after a

final and unfavorable determination has been made on the merits of the case in state court,

essentially permitting the defendant to litigate the same case twice."  Reply at 2 (citing Stark

Romero v. Nat'l R.R. Passenger Co., 763 F. Supp. 2d 1231, 1280-81 (D.N.M. 2011)(Browning,

J.)).  According to The Hartford, however, those concerns are not present in this case, because

The "Hartford took no action in state court before removing this case, let alone an action for

which it now seeks an alternative outcome from the Court."  Reply at 3.  The Hartford maintains

that the lack of activity in this case before it removed the case to federal court shows that this

Motion is not an attempt to relitigate a final and unfavorable state determination.  See Reply at 3.

The Hartford contends that its "pleadings and summary judgment motion in the Rael Lawsuit are

simply not relevant to a determination of waiver, particularly when Hartford was dragged into the underlying state court lawsuit as a co-defendant several months into the litigation."  Reply at 3.  The Hartford insists that it has the right to litigate in federal court and the right to challenge Grasshopper Medicine's failure to state a claim upon which relief can be granted.  See Reply at 3-4.

The Hartford next re-asserts its argument that the Court should dismiss the Plaintiffs' breach-of-fiduciary-duty and negligence claims with prejudice, because New Mexico does not recognize these causes of action in the insurance context.  See Reply at 4.  The Hartford argues that the Court must dismiss these claims regardless whether the Court chooses to apply the Iqbal/Twombly standard requiring facial plausibility or the lower standard in favor of which the Plaintiffs advocate.  See Reply at 4.  The Hartford contends that, as a matter of law, the Plaintiffs cannot maintain a cause of action for breach of fiduciary duty against them.  See Reply at 4.  The Hartford maintains that "[a]n insurance relationship alone . . . is not enough to give rise to a fiduciary relationship."  Reply at 5 (quoting Azar v. Prudential Ins. Co., 2003-NMCA-062, ¶ 54, 68 P.3d at 926).  According to The Hartford, instead "'an insurer assumes fiduciary obligation toward an insured only in matters pertaining to the performance of obligations in the insurance contract.'  Thus, 'the fiduciary duty of an insurer is based on its exclusive control and obligations in matters pertaining to the performance of the insurance contract.'"  Reply at 5 (quoting Azar v. Prudential Ins. Co., 2003-NMCA-062, ¶ 54, 68 P.3d at 926).

The Hartford rejects the Plaintiffs' categorization of The Hartford's "defense in the Rael Lawsuit as pertaining to the performance of Hartford's contractual obligations under the insurance policy."  Reply at 5.  The Hartford argues that an insurer's fiduciary duty arises solely from the "express terms, obligations, and conditions of the insurance policy," Reply (quoting

Sanchez v. Allstate Ins. Co., 2010 WL 3998040, at * 5 (N.M. Ct. App.), and that, "[i]f the policy does not expressly address the conduct of which the plaintiff is complaining, then the plaintiff has failed to plead sufficient facts to maintain a claim for breach of fiduciary duty," Reply at 5. The Hartford further argues:

> Here, Grasshopper has failed to direct this Court's attention to any language within the policy that would obligate Hartford to limit its ability to defend itself during litigation.   Because this obligation does not exist in the policy, Grasshopper cannot, as a matter of law, plead facts sufficient to establish that Hartford breached any fiduciary duty owed to Grasshopper arising from its defense in the Rael Lawsuit.  Grasshopper cannot cure this legal insufficiency by adding "facts" to its complaint.
>
> Grasshopper's argument, if true, would cripple Hartford's ability to properly defend itself in *any* lawsuit.  This is not a position that courts have been willing to take.  Allowing Hartford's pleadings in the Rael Lawsuit to serve as evidence of a breach would "undermine an insurer's right to contest questionable claims and to defend itself against such claims . . . permitting allegations of litigation misconduct would have a chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law." *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.,* 71 F.3d 336 (10th Cir. 1995).  Grasshopper cannot meet its pleading burden to maintain a cause of action for breach of fiduciary duty, and this claim must be dismissed under Federal Rule 12(b)(6).

Reply at 6 (emphasis in original).[10]

The Hartford reasserts its argument from the Motion that New Mexico does not recognize a cause of action for negligence against an insured and that the Court must dismiss the Plaintiffs' negligence claim.  See Reply at 6.  The Hartford insists that the Supreme Court of New Mexico has expressly refused to recognize a separate cause of action for negligence, stating: to "impose a negligence standard on the insurer would violate this general rule and impose a duty that is not

---

[10]The Court has lifted this quote directly from The Hartford's Reply without omitting any words or making any alterations.

expressly provided for in the contract of insurance."[11]   Reply at 7 (quoting <u>Ambassador Ins. Co.</u> <u>v. St. Paul Fire & Marine Ins. Co.</u>, 1984-NMSC-107, ¶ 11, 690 P.2d 1022, 1024-25).   The Hartford contends that none of the cases that the Plaintiffs cite involve the assertion of a negligence claim against an insurer.   <u>See</u> Reply at 7.   The Hartford therefore maintains that each of the Plaintiffs' factual allegations purporting to support their negligence claim fails to do so. <u>See</u> Reply at 7.   The Hartford argues that, "[w]hile Grasshopper's assertions *may* provide a basis for their claim for bad faith, their allegations do not -- and cannot -- state a claim for negligence upon which relief can be granted."   Reply at 7 (emphasis in original).   It therefore asks the Court to dismiss the Plaintiffs' negligence claim.   <u>See</u> Reply at 7.

---

[11]In its Reply, The Hartford does not provide the full quote from <u>Ambassador Insurance</u> <u>Co. v. St. Paul Fire & Marine Insurance Co.</u>, which is required to properly understand which "general rule" the Supreme Court of New Mexico was referring to.   In <u>Ambassador Insurance</u> <u>Co. v. St. Paul Fire & Marine Insurance Co.</u>, the Supreme Court of New Mexico stated:

> However, under the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith.   17 Am. Jur. 2d *Contracts* § 256 (1964).   New Mexico recognizes this duty of good faith between insurer and insured.   *See State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *State Farm Fire and Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App. 1984); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App. 1976); *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972).   This implied covenant is an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties.   17 Am.Jur.2d *Contracts* § 255 (1964).   To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance.

1984-NMSC-107, ¶ 11, 690 P.2d at 1024-25.

4.      **The Hearing on the Motion.**

The Court held a hearing on August 18, 2015.[12]  See Transcript of Hearing (taken August 18, 2015)("Tr.").[13]  The parties first made their arguments with respect to the Plaintiffs' Motion to Remand and the Court indicated that it was inclined to deny the Motion to Remand.  Tr. at 1:20-43:5 (Court, Jacobus, Keller).  The Court explained:

> Well, I'm inclined to -- I need to look at [D]art [Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014)], because that is a very recent case that I need to study and take into consideration.  So I will study it.  But based upon what I think the legal certainty test is, [and] given where the case was at the beginning with these claims, . . . this evidence [has] probably been undermined by the sett[le]ment [offer] . . . but I'm inclined to think I still have jurisdiction[.]  I'm inclined to deny the motion to remand.  But I need to give it some thought and I'll try to have an opinion out to you by the time we get together for the ISC.

Tr. at 42:15-43:3 (Court).

In anticipation of retaining subject-matter jurisdiction over this case, the Court then asked the parties to argue the Motion.  See Tr. at 43:3-6 (Court).  The Hartford largely stuck to its briefing.  See Tr. at 43:3-60:22 (Court, Keller).  It emphasized that, with respect to the breach-of-fiduciary-duty claim, it could identify four general acts or circumstances that purportedly form the basis of the Plaintiffs' breach-of-fiduciary-duty claim: (i) subordination of the insured's interests to The Hartford's interests; (ii) providing this information in connection with the renewal of the worker's compensation policy; (iii) negligently causing a lapse in that policy; and (iv) the alleged failure to defend.  See Tr. at 44:5-15 (Keller).  The Court asked for specific

---

[12]At the August 18, 2015, hearing, the Court also heard oral argument on the Plaintiffs' Motion to Remand.  On March 30, 2016, the Court issued an Order, filed March 30, 2016 (Doc. 46)("Motion to Remand Order"), denying the Motion to Remand.  This Memorandum Opinion addresses only the Motion, but as stated in the Motion to Remand Order, the Court will "at a later date issue a Memorandum Opinion more fully detailing" the Court's rationale for denying the Motion to Remand.  Motion to Remand Order at 1 n.1.

[13]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

examples where courts have found that the carrier has both exclusive control and is engaged in matters concerning the performance of the contract's obligations.  See Tr. at 44:21-45:1 (Court).  The Hartford explained that those are cases where the contract, for example, provides the carrier with exclusive control over the ability to settle within policy limits.  See Tr. at 45:2-15 (Keller).  The Hartford stated that another example, given in Chavez v. Chenoweth, is where a carrier, when its insured asks, advises the insured to not get an attorney and to defer to the insurer's advice.  See Tr. at 46:6-10 (Keller).  The Hartford emphasized that the circumstances in which a fiduciary duty has been recognized are narrow and that the circumstances in this case cannot trigger a fiduciary duty.   See Tr. at 46:12-47:5 (Keller).   With respect to the Plaintiffs' negligence claim, The Hartford stuck to its arguments from the briefing.  See Tr. at 48:24-50:13 (Keller).

The Court then noted that The Hartford relies heavily upon the absence from the Uniform Jury Instructions of instructions on negligence and breach of fiduciary duty, and asked whether there was just an absence or whether they made a comment with respect to these causes of action.  See Tr. at 50:14-18 (Court).  The Hartford responded that, with respect to breach of fiduciary duty, the Uniform Jury Instructions contain a comment:

> This is on page 6 of the [Motion].  I reference UJI 13[-]1708, breach of fiduciary duty no instruction drafted[.]  The committee commentary to that provision states, quote while the relationship between insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to the performance of an insurance contract[,] no cause of action apart from bad faith exists for the breach of this duty.  And that committee commentary cites to what I believe is Chavez v[.] Chenowith.

Tr. 50:24-51:9 (Keller).  In response to the Court's questioning, The Hartford explained that Chavez v. Chenowith is a Court of Appeals of New Mexico case and that it is not aware when

the last time was that the committee reviewed the instructions on bad faith.  See Tr. 51:10-25 (Keller).

The Court then asked why it should reach the same conclusion with respect to the negligence claim.  See Tr. at 52:1-4 (Court).  The Court observed that negligence is a tort that is almost always available to a plaintiff.  See Tr. at 52:4-7 (Court).  The Hartford responded that, in the insurance contracting arena, the contract defines the parties' duties, rights, and obligations.  See Tr. at 52:10-13 (Keller).  The Hartford explained that the Plaintiffs have a tort remedy available to them -- breach of the implied covenant of good faith and fair dealing -- which they have already alleged.  See Tr. at 52:25-53:9 (Keller).  The Hartford further asserted that it has not found any New Mexico case in which an insurance carrier was defending against any tort other than a breach of the implied covenant of good faith and fair dealing.  See Tr. at 53:9-20 (Keller). The Court then expressed concern that, with respect to the fiduciary-duty claim, the committee note seems to recognize that insurance carriers have fiduciary duties, but that there is no cause of action for breach-of-fiduciary duties.  See Tr. at 54:4-8 (Court).  The Hartford responded that the fiduciary duties are extremely narrow, that there is no fiduciary duty issue triggered under this case's facts, and that, even if there were a fiduciary duty triggered, no cause of action exists independent from a claim for bad faith.  See Tr. at 54:15-56:3 (Keller).

The Court then asked whether it is correct that the committees cannot publish jury instructions or comments without the Supreme Court of New Mexico's approval.  See Tr. at 56:4-8 (Court).  The Hartford confirmed that requirement to be correct.  See Tr. at 56:8-9 (Keller).  The Court asked The Hartford whether it was troubled that the committee was relying on Chavez v. Chenoweth, a 1976 Court of Appeals of New Mexico case.  See Tr. at 56:10-11 (Court).  The Court observed that its job is to predict what the Supreme Court of New Mexico

would do.  See Tr. at 56:12-14 (Court).  The Court asked whether Chavez v. Chenoweth's age and the probability that the Supreme Court of New Mexico, if it were confronted with this question today, might say that there are causes of action for either fiduciary duty or negligence troubled The Hartford.  See Tr. at 56:14-17 (Court).  The Hartford responded that it is not concerned and that, in its practice in this legal area for fifteen years, Chavez v. Chenoweth has been consistently cited as the law and the Court of Appeals of New Mexico cited in Chavez v. Chenoweth in Azar v. Prudential Ins. Co.  See Tr. at 57:1-7 (Keller).  The Court asked whether the Supreme Court of New Mexico has blessed or cited to Chavez v. Chenoweth.  See Tr. at 57:8-15 (Court).  The Court and The Hartford then had the following exchange:

> MS. KELLER:  Here we go, Ambassador v[.] St. Paul -- okay, 1984.  I'm still not in the present century, but there is a Supreme Court opinion.
>
> THE COURT:  What does it say?
>
> MS. KELLER:   Ambassador is cited for the same proposition as Chavez [v.] Chenowith with . . . Azar [v. Prudential Ins. Co.].  There is also an unpublished opinion that slipped into this brief which is that the cause of action does not, the fiduciary duty is narrow.  I'm not sure that these courts have gone out and said expressly there is no cause of action in the same way that the jury instruction committee did, but the fact that the duty is so narrow, I submit it doesn't even matter if you find that there should be or could be a cause of action, the fact remains amendment in this case would be futile, because their allegations don't fit with . . . that narrow category of acting, having exclusive control and acting in performance of the contract.
>
>     So there [are] two issues.  One is whether or not there is . . . a cause of action, whether or not this Court should rely on the jury instruction and the committee commentary.  My point is relying on well settled precedent, which you know, absent something different, I don't have anything else to rely on, there is a narrow scope and it makes sense if you think about it too.  It's not illogical to . . . go that a carrier is in a fiduciary role when they're in charge of settlement[,] when they're the one who . . . go[es] out and take[s] responsibility for it, and ha[s] exclusive control over it, . . . they have to act in the interest of their insured.  But that doesn't broadly cover every instance in which a carrier is dealing with its insured.  So think about the implications if it were to be expanded beyond just the narrow circumstances identified in Chavez [v. Chenowith].  It's overly broad. They're not expected to act as a fiduciary in all matters.  Just because they're an

insurance company in a contract with an insured does not mean that they're a fiduciary for all intents and purposes.  They're a fiduciary only and I believe that the basis and I think it was Judge Fry's[14] opinion in Azar [v. Prudential Ins. Co.] that gave me a little bit more crystal understanding or crystal clear understanding of it.  Looking back for New Mexico law in connection with fiduciary generally, fiduciary generally is treated in New Mexico, and it again is in a situation where a person or an entity assumes or presumes to act on behalf of a party of another.  So taking that dynamic or that paradigm and applying it in the insurance industry or the insurance context, again it's got to be limited to this assumption or presumption to have exclusive control over something and then going out and acting on behalf of another.  So to argue that a carrier is a fiduciary and acts as a fiduciary in all instances in dealing with its insured is overly broad and I would suggest not supported either under Chavez [v. Chenowith] in the insurance context or New Mexico law concerning fiduciary generally.

Tr. at 58:14-60:22 (Court, Keller).

The Plaintiffs then took up argument on the Motion.  See Tr. at 62:21-63:4 (Court, Jacobus).  The Court asked why the Plaintiffs needed the two additional claims given that the Plaintiffs have the bad-faith action.  See Tr. at 62:22-63:3 (Court).  The Plaintiffs responded that, from a practical standpoint, it gives them additional claims.  See Tr. at 63:24-25 (Jacobus).  The Plaintiffs explained that it is easy for The Hartford, in the case's early stage, when no discovery has occurred, to state that there is no prejudice to dismiss these two claims when the Plaintiffs have these other claims.  See Tr. at 63:25-64:6 (Jacobus).  They rejected this argument unless The Hartford is going to stipulate that it is never going to file dispositive motions on the Plaintiffs' other claims.  See Tr. at 63:25-64:6 (Jacobus).  The Plaintiffs argued that nobody knows what the Supreme Court of New Mexico would do in this case on these two claims, and that there are New Mexico cases stating that commentary is neither persuasive nor binding on any court.  See Tr. at 64:15-23 (Jacobus).  The Plaintiffs maintained that, even if the Supreme

---

[14]The Honorable Cynthis A. Fry was a judge on the Court of Appeals of New Mexico from December 1, 2000 until December 31, 2016.

Court of New Mexico denied certiorari in <u>Chavez v. Chenoweth</u>, the lack of review means absolutely nothing in terms of precedential value. <u>See</u> Tr. at 65:23-65:3 (Jacobus).

The Court then asked whether the Plaintiffs can cite any Supreme Court of New Mexico cases suggesting that the higher court does not agree with the way this area of law has developed. <u>See</u> Tr. at 65:4-7 (Court). The Court explained that it has in the past disagreed with Court of Appeals of New Mexico cases, because it concluded that the Supreme Court of New Mexico would probably reach a different conclusion. <u>See</u> Tr. at 65:15-22 (Court). It noted, however, that in such cases, the Court was able to see a thread in the Supreme Court of New Mexico's cases that led it to think that the Supreme Court of New Mexico would come out differently. <u>See</u> Tr. at 65:21-25 (Court). The Court asked why it should conclude that the Supreme Court of New Mexico would not be comfortable with the law that the Court of Appeals of New Mexico has developed, if the Plaintiffs cannot provide the Court with that thread. <u>See</u> Tr. at 65:25-66:3 (Court). The Plaintiffs responded that the Court is at the 12(b)(6) stage on a complaint that was drafted in state court, and stated that perhaps the parties could have supplemental briefing on what the Supreme Court of New Mexico might do in a situation like this one. <u>See</u> Tr. at 66:4-15 (Jacobus). The Plaintiffs then argued that the decisions in <u>Allsup's Convenience Stores, Inc. v. The North River Insurance Co.</u> and <u>Azar v. Prudential Insurance Co.</u> stand for the proposition that fiduciary duties in the insurance context are broader than what <u>Chavez v. Chenoweth</u> suggests. <u>See</u> Tr. at 67:13-68:4 (Jacobus). The Plaintiffs then reasserted their arguments from the briefing. <u>See</u> Tr. at 68:4-72:7 (Jacobus). With respect to their negligence claim, the Plaintiffs argued that in <u>Allsup's Convenience Stores, Inc. v. The North River Insurance Co.</u> the Court of Appeals of New Mexico suggested that an insurance company has an obligation to disclose unprotected risks to its insured. <u>See</u> Tr. at 72:7-15 (Jacobus).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.   See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, f assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis omitted).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions.  First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss.  See Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)); Robbins v. Oklahoma, 519 F.3d 1242.  Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense

are apparent on the face of the complaint.  See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish.  See 5 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute.  The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  It appears that, from case law in several Courts of Appeals, the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)(Ripple, J.).  Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice.  See Anderson Living

Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

## A FEDERAL DISTRICT COURT TAKES A REMOVED CASE AS THE COURT FINDS IT

When a case is removed from state court, the federal court takes the case in its current posture and treats previously entered orders as its own.  The Supreme Court in Granny Goose Foods v. Brotherhood of Teamsters, Local No. 70, stated:

> Congress clearly intended to preserve the effectiveness of state court orders after removal. . . .  After removal, the federal court "takes the case up where the State court left it off."  Duncan v. Gegan, 101 U.S. 810 (1880).  The "full force and effect" provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court.
>
> More importantly, once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal.

415 U.S. at 436-37.  See 28 U.S.C. § 1450 (stating that all orders entered before removal "shall remain in full force and effect until dissolved or modified by the district court"); Fed. R. Civ. P. 81(c)(1) (stating that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court").  In Wallace v. Microsoft Corp., 596 F.3d 703, 707 (10th Cir. 2010), the Tenth Circuit stated:

> After the removal of an action from state court . . . the case will proceed as if it originally had been brought in the federal court[;] [t]hus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.

596 F.3d at 707 (citations omitted)(internal quotation marks omitted).  In Tapia v. City of Albuquerque, 10 F. Supp. 3d 1323, (D.N.M. 2014)(Browning, J.), the Court discussed whether state pleading requirements should continue to govern a case removed to federal court:

- 33 -

> During the hearing, the Plaintiffs mentioned, as an aside, that the case was filed in state court under state-court pleading requirements.  The Plaintiffs did not argue that state pleading requirements should continue to govern, nor could they: under rule 81(c)(1) of the Federal Rules of Civil Procedure, those "rules apply to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1).

10 F. Supp. 3d at 1410 n.14.  After removal, "[t]he district court then c[an] set aside [a] default judgment under Fed. R. Civ. P. 55(c) and 60(b)."  Jenkins v. MTGLQ Investors, 218 F. App'x 719, 724 (10th Cir. 2007)(affirming the federal district court's application of rule 60(b) to set aside the state court's dismissal of a case based on improper service of process).

After removal, a federal court treats the state court orders as its own.  The United States Court of Appeals for the Fifth Circuit stated in Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir. 1984):

> Once a state court action is removed, it is governed by federal, rather than state, procedure. . . . Federal Rule of Civil Procedure 55(c) allows relief from a default judgment in accordance with the terms of Rule 60(b), which states that a judgment may be set aside for ". . . mistake, inadvertence, surprise, or excusable neglect. . . ."

742 F.2d 890, 895.  See In re Savers Fed. Sav. & Loan Ass'n, 872 F.2d 963, 966 (11th Cir. 1989)("In the instant case, in which removal and notice of appeal were timely, we will take the case as we find it on removal and treat everything that occurred in the state court as if it had taken place in the district court below.").  As the Ninth Circuit has recognized, "a federal court must take a case as it finds it on removal, requiring a district court to treat a prior state judgment 'as though it had been validly rendered in [a] federal proceeding.'"  Resolution Trust Corp. v. BVS Dev., Inc., 42 F.3d 1206, 1212 (9th Cir. 1994)(quoting Butner v. Neustadter, 324 F.2d 783, 786 (9th Cir. 1963)).  At least two circuits have recognized that, where there has been a final judgment entered in the state court before removal, the proper action for the federal district court is to enter the state court's judgment as its own.  See Resolution Trust Corp. v. BVS Dev., Inc.,

42 F.3d at 1210; <u>FDIC v. Kahlil Zoom-In Markets</u>, 978 F.2d 183, 184 (5th Cir. 1992).  <u>See also</u>

<u>Nieto v. Univ. of N.M.</u>, No. 08-0465, 2010 WL 4929013, at *11 (D.N.M. Oct. 31,

2010)(Browning, J.)("The Court finds that rule 60(b)(6) governs Nieto's Motion, because the

Court treats the state district court's order as its own, and more than one year has passed since

the decision was entered."); <u>Stockton v. Can. Life Assurance Co.</u>, No. 08-3016, 2008 WL

3925159, at *4 (C.D. Ill. Aug. 20, 2008)(Scott, J.)("After the state court's jurisdiction ends, the

federal court must treat any judgment entered before the state court received notice [of removal]

as if it [the federal court] had entered the judgment").

### <u>NEW MEXICO LAW REGARDING BREACH OF CONTRACT CLAIMS</u>

A contract is a legally enforceable promise that must consist of an offer, an acceptance,

consideration, and mutual assent.  <u>See</u> N.M.R.A., Civ. UJI 13-801.  A person may breach a

contract by failing to perform a contractual obligation when the performance is required, unless

that performance is otherwise excused.  <u>See</u> N.M.R.A., Civ. UJI 13-822.  Incomplete

performance is a breach of contract.  <u>See</u> <u>Cochrell v. Hiatt</u>, 1981-NMCA-125, ¶ 6, 638 P.2d

1101, 1103-04 (holding that, where the contract called for the roof to be restored to a "healthy"

state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-

five year period, the defendant's performance was incomplete, and the defendant was in breach

of the contract).  Under New Mexico law, "[t]he elements of a breach-of-contract action are the

existence of a contract, breach of the contract, causation, and damages."  <u>Abreu v. N.M.</u>

<u>Children, Youth and Families Dep't</u>, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and
> binding contract; (2) the plaintiff's compliance with the contract and his
> performance of the obligations under it; (3) a general averment of the
> performance of any condition precedent; and (4) damages suffered as a result of
> defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338.

Applying these principles in Armijo v. N.M. Department of Transportation, No. CIV. 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.), the Court found that a plaintiffs' allegations failed to state a claim for breach of contract.  In support of the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."   2009 WL 1329192, at *7.   The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and did not say "to what his employment contract entitles him or of what the Department deprived him." 2009 WL 1329192, at *7.  The Court found that there was "not enough . . . to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract."  2009 WL 1329192, at *8.   On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  See Archuleta v. City of Roswell, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at *16-17 (D.N.M. Sept. 30, 2012)(Browning, J.).

"Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract."   Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0040 JB/LFG, 2013 WL 3456913, at *42 (June 28, 2013)(Browning, J.).  The Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, 784 P.2d 991: "Our previous cases clearly establish that, in contract cases not

involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  1989-NMSC-081, ¶ 23, 784 P.2d at 998.  Punitive damages are not available when they are "predicated solely on gross negligence.  In addition to, or in lieu of, such negligence there must be evidence of an evil motive or a culpable mental state."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 25, 880 P.2d 300, 308 (internal quotation marks omitted).  The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted).  A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted).  The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of _____ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

N.M.R.A., Civ. UJI 13-861.

## NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."  Watson Truck & Supply Co., Inc. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d 639, 642 (citations omitted).  "Broadly stated, the covenant

requires that neither party do anything which will deprive the other of the benefits of the agreement." Watson Truck & Supply Co. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d at 642 (internal quotation marks omitted). New Mexico has recognized that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract. See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 16, 872 P.2d 852, 857. This Court has previously held that a "claim for the breach of the covenant of good faith and fair dealing is derivative of the breach-of-contract claim." Back v. ConocoPhillips Co., 2012 WL 6846397, at *22 (D.N.M. Aug. 31, 2012)(Browning, J.)(citing Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *7 (D.N.M. Apr. 6, 2009)(Browning, J.)). The Supreme Court of New Mexico has also explained that tort recovery for breach of the covenant of good faith and fair dealing is permissible only where a special relationship exists, such as between an insurer and its insured. See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 16, 872 P.2d at 857. The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857 (citations omitted)(internal quotation marks omitted). Similarly, the Court of Appeals of New Mexico has held that "[t]he claim of breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists." Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 18, 144 P.3d 111, 117.

The Supreme Court of New Mexico has indicated that "the duty to not act in bad faith or deal unfairly" which an implied covenant of good faith and fear dealing within a contract imposes "becomes part of the contract and the remedy for its breach is on the contract itself." Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857 (discussing an

Arizona case and distinguishing this measure of damages from tort damages that are available for breach of this covenant in the insurance context).  In the insurance context, however, a plaintiff can recover tort damages for breach of this implied covenant.   See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857.  The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship."  Melnick v. State Farm Mut. Auto. Ins. Co., 1998-NMSC-012, ¶ 13, 749 P.2d 1105, 1109.  This limitation is because "there is no contract of employment upon which the law can impose the stated duty to exercise good faith and fair dealing."  Sanchez v. The New Mexican, 1987-NMSC-059, ¶ 13, 738 P.2d 1321, 1324 (emphasis in original).

As the Supreme Court of New Mexico explained in Continental Potash, Inc. v. Freeport-McMoran, Inc., 1993-NMSC-039, 858 P.2d 66:

> Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract.  The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party.

1993-NMSC-039, ¶ 64, 858 P.2d at 82 (citing Watson Truck & Supply Co. v. Males, 1990-NMSC-105, ¶ 10, 801 P.2d at 642).  See Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 188 P.2d 1200, 1203.

> However, the implied covenant of good faith and fair dealing protects only against bad faith -- wrongful and intentional affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the potential of harm to the other party.  Simply put, in contract there is no implied covenant to exercise "ordinary care," or even "slight care," and the fact that the breaching party may not have acted with ordinary or slight care is immaterial to the questions whether the contract has been breached and if so, what damages should be awarded for the breach.

Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, 880 P.2d at 309-10 (footnote omitted).

The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of

good faith and fair dealing "under circumstances where . . . it may be argued that from the

covenant there is to be implied in fact a term or condition necessary to effect the purpose of a

contract." Watson Truck & Supply Co. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d at 642.

> Generally, in the absence of an express provision on the subject, a contract
> contains an implied covenant of good faith and fair dealing between the parties.
> Under the implied covenant of good faith and fair dealing, courts can award
> damages against a party to a contract whose actions undercut another party's
> rights or benefits under the contract. Our Supreme Court has nevertheless refused
> to apply this implied covenant to override an express at-will termination provision
> in an integrated, written contract.

Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co, 407 F.3d 1091, 1114-15 (10th Cir. 2005)(quoting

Kropinak v. ARA Health Servs., Inc., 2001-NMCA-081, ¶ 5, 33 P.3d 679, 681)(secondary

citations omitted)).

## RELEVANT NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a

plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the

breach being a cause-in-fact and proximate cause[15] of the plaintiff's damages. See Herrera v.

Quality Pontiac, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 186. "In New Mexico, negligence

encompasses the concepts of foreseeability of harm to the person injured and of a duty of care

toward that person." Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825, overruled

on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249. Generally,

---

[15]The 2004 amendments to Uniform Jury Instruction 13-305 eliminated the word
"proximate" within the instruction. See Use Note, N.M. Rul. Amend. Civ. UJI 13-305. The
drafters added, however, that the change was "intended to make the instruction clearer to the jury
and do[es] not signal any change in the law of proximate cause." Editor's Notes, N.M. Rul.
Amend. Civ. UJI 13-305.

negligence is a question of fact for the jury.  See Schear v. Bd. of Cty. Comm'rs of Bernalillo Cty., 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant."  Schear v. Bd. of Cty. Comm'rs of Bernalillo Cty., 1984-NMSC-079, ¶ 4, 687 P.2d at 729.  "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of Cty. Comm'rs of Bernalillo Cty., 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  Baxter v. Noce, 1988-NMSC-024, ¶ 11, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186.  The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 143, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84.  "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not

prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 626, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## RELEVANT LAW REGARDING THE NEW MEXICO UNFAIR PRACTICES ACT

"The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices." Valdez v. Metro. Prop. & Cas. Ins. Co., No. 11-0507, 2012 WL 1132414, at *19 (D.N.M. Mar. 31, 2012)(Browning, J.)(citing Ouynh Truong v. Allstate Ins. Co., 2010-NMSC-009, ¶ 22, 227 P.3d 73, 80)). "Generally speaking, the UPA is designed to provide

a remedy against misleading identification and false or deceptive advertising." Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 22, 166 P.3d 1091, 1096. To state a claim under the UPA, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 5, 166 P.3d at 1093 (citing N.M. Stat. Ann. § 57-12-12(D); Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d 1308, 1311)). "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 17, 965 P.2d 332, 338.

## LAW REGARDING THE UNFAIR INSURANCE PRACTICES ACT

The New Mexico Legislature passed the Unfair Insurance Practices Act, N.M. Stat. Ann. § 59A-16-20 ("UIPA"), "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices." N.M. Stat. Ann. § 59A-16-2. N.M. Stat. Ann. § 59A-16-4 proscribes certain forms of misrepresentations that relate to insurance transactions, including "misrepresent[ing] the benefits, advantages, conditions or terms of any policy." N.M. Stat. Ann. § 59A-16-4. N.M. Stat. Ann. § 59A-16-5 forbids "untrue, deceptive or misleading" advertisements that relate to insurance. N.M. Stat. Ann. § 59A-16-5. N.M. Stat. Ann. § 59A-16-8 makes actionable certain falsifications of insurance records and the circulation of "any false statement of the financial condition of an insurer." Various provisions in the UIPA proscribe discrimination in relation to insurance transactions. See, e.g., N.M. Stat. Ann. §§ 59A-16-11 to -

13.2.  N.M. Stat. Ann. § 59A-16-19 prohibits anti-competitive insurance practices "resulting or tending to result in unreasonable restraint of, or monopoly in, the business of insurance."  N.M. Stat. Ann. § 59A-16-19.

The UIPA imposes liability for a laundry list of unfair insurance claims practices, including the following:

A.   misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.   failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.   failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.   failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.   not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.   failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.   compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.   attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.   attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

- 44 -

J.  failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.  making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.  delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.  failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.  failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O.  violating a provision of the Domestic Abuse Insurance Protection Act.

N.M. Stat. Ann. § 59A-16-20.  N.M. Stat. Ann. § 59A-16-30 provides a right of action for violations of the UIPA.  See N.M. Stat. Ann. § 59A-16-30.  The UIPA allows for attorney's fees to prevailing parties.  See N.M. Stat. Ann. § 59A-16-30.  The Honorable Bruce D. Black, United States District Judge for the District of New Mexico, has concluded that a plaintiff failed to plausibly plead a UIPA claim:

Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged. At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20. Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing,

- 45 -

to be based on Provident's alleged bad faith in terminating his disability benefits. As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith.  Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d 1215, 1227 (D.N.M. 2001)(Black, J.)(footnote omitted)(citations omitted).   The Court has previously found that a plaintiff failed to state a claim under rule 12(b)(6) when the complaint did not contain even "a formulaic recitation of the elements of a cause of action" under the UIPA.  Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486 JB/WDS, 2012 WL 1132332, at *7 (D.N.M. Mar. 28, 2012)(Browning, J.)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## NEW MEXICO LAW REGARDING FALSE CONFLICTS OF LAW

In Ferrell v. Allstate Insurance Co., 2008-NMSC-042, 188 P.3d 1156, the Supreme Court of New Mexico described the "false conflict" or "actual conflict"[16] doctrine: "Under this analysis, when the laws of the relevant states do not actually conflict, the court may avoid a conflict-of-law analysis and may apply forum law to the entire class."  2008-NMSC-042, ¶ 16, 188 P.3d at 1164 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 816 (1985)).  "If, however, the laws of the relevant states actually conflict, or if the laws of certain of the relevant states conflict, then the forum court must resolve that conflict using the choice-of-law rules

---

[16]The Supreme Court of New Mexico used the term "actual conflict" to refer to what the Court of Appeals of New Mexico had called the "false conflict" doctrine, because

"false conflict" actually has two different meanings.  See Robert A. Leflar et al., American Conflicts Law, § 92, at 270 (4th ed. 1986).  The first meaning of "false conflict" arises from the choice-of-law method advanced by Professor Brainerd Currie, "the governmental interest" analysis.  Id. at 270-71.  Under Currie's method, a false conflict arises when "only one of the involved states would be interested in applying its law."  Eugene F. Scoles et al., Conflict of Laws § 2.9, at 28 (4th ed. 2004).  The second meaning of the term "false conflict" is "no conflict of laws."  Leflar et al., supra, § 92, at 272.

Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 16 n.2.

contained in the forum state's conflict-of-laws doctrine." 2008-NMSC-042, ¶ 16, 188 P.3d at

1164. The focus of the doctrine is "not on whether the laws are superficially identical as written,

but whether the effect of laws would be identical as applied to a particular case." Fowler

Brothers, Inc. v. Bounds, 2008-NMCA-091, ¶ 9, 188 P.2d 1261. See Ferrell v. Allstate

Insurance Co., 2008-NMSC-042, ¶ 18.

In Fowler Brothers, Inc. v. Bounds, an unlicensed contractor that was a purported

employee of a licensed contractor working on an out-of-state contractor brought action against

the licensed contractor for breach of contract and unjust enrichment after the licensed contract

ceased to pay for work on the project. The Court of Appeals of New Mexico, in an opinion that

the Honorable Michael Bustamante wrote and in which the Honorable Lynn Pickard and

Roderick T. Kennedy joined, held that Arizona and New Mexico contractor licensing law did not

conflict as applied to the action. The district court had concluded that: (i) under either Arizona

or New Mexico law, the plaintiff was required to have an Arizona contractor's license to perform

work on the project; and (ii) under either Arizona or New Mexico law, the plaintiff is prohibited

from recovering under any cause of action, including equitable remedies, for its work on the

project, because it did not have such a license. See 2008-NMCA-091, ¶ 5. The district court had

avoided the choice-of-law issue by determining, albeit implicitly, that the applicable law of

Arizona and New Mexico were the same or would yield the same results. See 2008-NMCA-091,

¶ 8. More specifically, the district court had dismissed the plaintiff's claims on the basis of its

legal conclusion that, "[u]nder either Arizona or New Mexico law, Plaintiff is prohibited from

recovering under any cause of action, including equitable remedies, for its work on the Project,

because it did not have [an Arizona's contractor's] license." 2008-NMCA-091, ¶ 5.

The Court of Appeals of New Mexico found that implicit in the district court's conclusion was its determination that there was no conflict between Arizona and New Mexico law as it relates to the dispositive issue in this case, i.e., whether the plaintiff was required to have an Arizona contractor's license to recover damages for its work on the project. See 2008-NMCA-091, ¶ 8. Judge Bustamante said the Court of Appeals of New Mexico would first consider whether the district court correctly determined that no conflict existed between Arizona and New Mexico law with respect to the case's circumstances, and concluded that no conflict existed. See 2008-NMCA-091, ¶¶ 8-11 ("This Case Presents No Conflict Between Arizona and New Mexico Law." (bold removed)).

## LAW REGARDING NEW MEXICO CHOICE-OF-LAW RULES

Where a plaintiff invokes a federal district court's diversity jurisdiction, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). The first step in a New Mexico choice-of-law analysis is to characterize the claim by "area of substantive law -- e.g., torts, contracts, domestic relations -- to which the law of the forum assigns a particular claim or issue." Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 11, 142 P.3d 374, 377. There are only a few categories within which claims might fall -- "[t]ort cases, i.e., all 'civil wrongs,' are one class; contracts, i.e., every kind of enforceable promise, is another single class." J. McLaughlin, Conflict of Laws: the Choice of Law Lex Loci Doctrine, the Beguiling Appeal of a Dead Tradition, Part One, 93 W. Va. L. Rev. 957, 989 (1991)(describing the categories as "tort, contract, or some other"). The court is then to apply the New Mexico choice-of-law rule applicable to that category of claim to determine what state's substantive law to apply. See

Guidance Endodontics, LLC v. Dentsply Intern., Inc., 749 F. Supp. 2d 1235, 1257 (D.N.M. 2010)(Browning, J.).

When a claim sounds in contract, New Mexico will generally apply the choice-of-law rule of *lex loci contractus* -- the law of the place of contracting.  See Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 52, 188 P.3d at 1172.  Like most states, however, "New Mexico respects party autonomy; [therefore] the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  Fiser v. Dell Comput. Corp., 2008-NMSC-046, ¶ 7, 188 P.3d 1215, 1218 (citing N.M. Stat. Ann § 55-1-301(A)).  See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 1989-NMSC-030, ¶¶ 10-13, 775 P.2d 233, 236.  "[W]hen application of the law chosen by the parties offends New Mexico public policy," however, a New Mexico court "may decline to enforce the choice-of-law provision and apply New Mexico law instead."  Fiser v. Dell Comput. Corp., 2008-NMSC-046, ¶ 7, 188 P.3d at 1218.  "New Mexico courts will not give effect to another state's laws where those laws would violate some fundamental principle of justice."  Fiser v. Dell Comput. Corp., 2008-NMSC-046, ¶ 7, 188 P.3d at 1218 (internal quotations omitted).  Where the plaintiff has invoked the federal district court's diversity jurisdiction, the court will accept New Mexico's law regarding whether to honor a contractual choice-of-law provision.  See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc., 436 F.3d 1257, 1260 (10th Cir. 2006)("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.").

On the other hand, if the underlying claim is categorized as a tort, "New Mexico courts follow the doctrine of *lex loci delicti commissi* -- that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."  Terrazas v. Garland & Loman,

Inc., 2006-NMCA-111, ¶ 12, 142 P.3d at 377.  The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place."  Zamora v. Smalley, 1961-NMSC-004, 358 P.2d 362, 363.  See Restatement (First) of Conflicts of Law § 377 & cmt. a (1934).  Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred.  See First Nat'l Bank in Albuquerque v. Benson, 1976-NMCA-072, 553 P.2d 1288, 1289 (referring to the rule as requiring application of "the law of the State of injury"); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 663 F. Supp. 2d 1138, 1150-51 (D.N.M. 2009)(Browning, J.).

Claims for unjust enrichment are distinct from claims sounding in contract or tort law.  See Hydro Conduit Corp. v. Kemble, 1990-NMSC-061, ¶ 18, 793 P.2d 855, 860 ("We have no disagreement with the scholarly view that restitution for unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two principal grounds for such liability, contract and tort.").  The Restatement (First) of Conflict of Laws § 453 provides: "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched."  Restatement (First) of Conflict of Laws § 453.  Although "New Mexico has traditionally followed the Restatement (First)," Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 50, 188 P.3d at 1171, the Supreme Court of New Mexico has been willing to follow the Restatement (Second) of Conflict of Laws in certain cases, such as in multi-state class action cases in which the laws of the states involved actually conflict, because the Restatement (First) of Conflict of Laws is "particularly ill-suited for the complexities present in multi-state class actions," Ferrell v. Allstate Ins. Co., 2008-NMSC-042, ¶ 56, 188 P.3d at 1173 (adopting the Restatement (Second) of Conflict of Laws for multi-state contract class actions).  In Fowler

- 50 -

Brothers, Inc. v. Bounds, the Court of Appeals of New Mexico explained that courts can "avoid a choice of law question when the laws of the involved states would produce identical results," 2008-NMCA-091, ¶ 9, 188 P.3d 1261, 1265, and agreed with the district court's implicit determination that Arizona and New Mexico law on unjust enrichment did not conflict as applied in the case, see 2008-NMCA-091, ¶ 20, 188 P.3d at 1267.

## ANALYSIS

The Court will grant the Motion. First, the Court has already denied the Plaintiffs' Motion to Remand, so the Plaintiffs' request that the Court refrain from deciding the Motion until it determines whether it retains subject-matter jurisdiction is moot. Second, because The Hartford removed this case to federal court, the Court must apply Iqbal/Twombly's federal pleading standards -- rather than New Mexico state-law pleading standards -- to the Complaint. Further, the Court will deny the Plaintiffs' request to amend their Complaint at this time. That denial does not preclude them, however, from filing a motion asking the Court for leave to amend their Complaint at a future date, although the Court predicts that amendment would likely be futile. Third, while the Court concludes that, under New Mexico law, the relationship between insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to performance of an insurance contract, no cause of action, independent of the action for bad faith, exists for breach of this duty. Accordingly, the Court will dismiss the Plaintiffs' breach-of-fiduciary-duty claim (Count V). Finally, the Court concludes that New Mexico does not recognize a cause of action for negligence or professional negligence against an insurance company. The Court will therefore dismiss the Plaintiffs' negligence and professional negligence claim (Count VI).

## I.   THE COURT HAS ALREADY DENIED THE PLAINTIFFS' MOTION TO <u>REMAND</u>.

The Plaintiffs ask the Court to refrain from deciding the merits of the Motion until it determines whether the Court has subject-matter jurisdiction over this action and decides their Motion to Remand.  See Response at 4.  At the hearing on the Motion, the Court explained that it was inclined to deny the Motion to Remand, explaining:

> Well, I'm inclined to -- I need to look at [D]art [Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014)], because that is a very recent case that I need to study and take into consideration.  So I will study it.  But based upon what I think the legal certainty test is, [and] given where the case was at the beginning with these claims, . . . this evidence [has] probably been undermined by the sett[le]ment [offer] . . . but I'm inclined to think I still have jurisdiction[.]  I'm inclined to deny the motion to remand.  But I need to give it some thought and I'll try to have an opinion out to you by the time we get together for the ISC.

Tr. at 42:15-43:3 (Court).  The Court subsequently  issued an Order, filed March 30, 2016 (Doc. 46)("Motion to Remand Order"), denying the Motion to Remand.  While the Court has yet to issue a Memorandum Opinion on the Motion to Remand, it stated that it would "at a later date issue a Memorandum Opinion more fully detailing" the Court's rationale.  Motion to Remand Order at 1 n.1.  The Court later entered an Order granting this Motion.  See Order at 1.  The Court has therefore already denied the Plaintiffs' Motion to Remand and has determined that it retains subject-matter jurisdiction over this lawsuit.  Accordingly, the Plaintiffs' request that the Court refrain from deciding the Motion until it determines whether it retains subject-matter jurisdiction is moot.

## II.   BECAUSE THE HARTFORD REMOVED THIS CASE TO FEDERAL COURT, IQBAL/TWOMBLY'S FEDERAL PLEADING STANDARDS APPLY.

The Plaintiffs argue that, if the Court determines that it retains subject-matter jurisdiction over this action, it should grant them leave to amend their Complaint, instead of dismissing any claims on the merits at this early stage.  See Response at 5.  The Plaintiffs assert that they

prepared their Complaint for state court, under state court pleading standards rather than under Iqbal/Twombly's pleading standards and that they contemplated litigation under those state court standards.  See Response at 5-6.

Rule 81(c)(1) of the Federal Rules of Civil Procedure states that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1).  The Tenth Circuit has further explained that "it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters."  Wallace v. Microsoft Corp., 596 F.3d at 707 (citations omitted)(internal quotation marks omitted).  See Tapia v. City of Albuquerque, 10 F. Supp. 3d at 1410 n.14 (explaining that under rule 81(c), the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court").  It is therefore uncontestable that Iqbal/Twombly's pleading standards and not New Mexico state court pleading standards govern the Court's determination whether it should grant the Motion.  Accordingly, the Court will apply Iqbal/Twombly's pleading standards to the Complaint to determine whether Count V and Count VI state a claim upon which relief can be granted.  As described below in Sections III and IV of this Memorandum Opinion, applying Iqbal/Twombly's pleading standards, the Court will grant the Motion.

In their Response, the Plaintiffs ask, however, the Court for the opportunity to amend their Complaint to comply with Iqbal/Twombly's pleading requirements.  The Court will deny the Plaintiffs' request to amend at this time.  That denial does not, however, preclude the Plaintiffs from moving to amend their Complaint at a later date, which would provide The Hartford with the opportunity to brief the issue.  As explained in Sections III and IV of this Memorandum Opinion, the Court notes that such amendment would likely be futile given that

the Court concludes that New Mexico does not recognize independent causes of action asserted against an insurance company for: (i) breach of fiduciary duty (Count V); and (ii) negligence and professional negligence (Count VI).

## III.   THE COURT WILL DISMISS THE PLAINTIFFS' BREACH-OF-FIDUCIARY-DUTY CLAIM (COUNT V).

The Hartford asks the Court to dismiss the Plaintiffs' breach-of-fiduciary-duty claim (Count V). The Court concludes that, regardless whether the Plaintiffs have sufficiently alleged that a fiduciary relationship exists under the facts of this case in light of the Court of Appeals of New Mexico's decision in Chavez v. Chenoweth and the committee commentary to New Mexico's Uniform Jury Instruction N.M.R.A., Civ. UJI 13-1708, the Court will dismiss the breach-of-fiduciary-duty claim (Count V), because New Mexico does not recognize a cause of action for breach of a fiduciary duty in the insurance context independent of a bad-faith claim.[17]

---

[17]In Stoner v. New York Life Insurance Co., 311 U.S. 464 (1940), the Supreme Court of the United States explained that "in cases where jurisdiction rests on diversity of citizenship, federal courts, under the doctrine of Erie Railroad v. Tomkins . . . must follow the decision of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." 311 U.S. at 467. See Anderson Living Trust v. ConocoPhillips Company, LLC, 2013 WL 11549178, at *8 (D.N.M. Sept. 18, 2013)(Browning, J.). "In particular, this is true where the intermediate state court has determined the precise question in issue in an earlier suit between the same parties, and the highest court of the state has refused review." Stoner v. New York Life Ins. Co., 311 U.S. at 467. See Adams-Arapahoe Joint School Dist. No. 28-J v. Continental Ins. Co., 891 F.2d 772, 774 (10th Cir. 1989)("With respect to issues which the Colorado Supreme Court has not addressed, we may consider all available resources, including Colorado appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court would construe the law in this case."). As the Tenth Circuit explained in Wade v. Emcasco Insurance Co., 483 F.3d 657 (10th Cir. 2007):

> In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to ascertain and apply the state law. The federal court must follow the most recent decisions of the state's highest court. Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In doing so, it may seek guidance from decisions rendered by lower courts in the

New Mexico's Uniform Jury Instructions governing bad-faith claims contains a jury instruction

entitled "Breach of Fiduciary Duty - No Instruction Drafted."   N.M.R.A., Civ. UJI 13-1708.[18]

The committee commentary to N.M.R.A., Civ. UJI 13-1708 states:

> While the relationship between insurer and insured imposes a fiduciary obligation
> on the insurer to deal with the insured in good faith in matters pertaining to
> performance of an insurance contract, no cause of action, apart from the action for
> bad faith, exists for the breach of this duty.  Chavez v. Chenoweth, 89 N.M. 423,
> 553 P.2d 703 (Ct.App. 1976).   The fiduciary obligation allows the award of
> punitive damages in insurance cases under a more relaxed standard.  See UJI 13-
> 1718; Romero v. Mervyn's, 109 N.M. 249, 255, 784 P.2d 992, 998 n.3 (1989).

N.M.R.A., Civ. UJI 13-1708 cmt.   With respect to Uniform Jury Instructions committee

commentary, the Supreme Court of New Mexico has explained:

> In any event, the committee comment is not the law of New Mexico, *see O'Hare
> v. Valley Utils., Inc.*, 89 N.M. 105, 112, 547 P.2d 1147, 1154 (Ct. App.)(stating
> that committee comments are not equivalent to the directions for use), *rev'd on
> other grounds*, 89 N.M. 262, 550 P.2d 274 (1976), and comments must stand on
> their own merit without implied endorsement of this Court.

Cress v. Scott, 1994-NMSC-008, ¶ 6, 868 P.2d 648, 650-51.

The Court concludes that the committee commentary to N.M.R.A., Civ. UJI 13-1708 --

explaining that no cause of action, apart from an action for bad faith, exists for the breach of

fiduciary duties in the insurance context -- stands on its own merit in that it properly articulates

the Court of Appeals of New Mexico's decision in Chavez v. Chenoweth.   There, the plaintiff

---

> relevant state, appellate decisions in other states with similar legal principles,
> district court decisions interpreting the law of the state in question, and the
> general weight and trend of authority in the relevant area of law.   Ultimately,
> however, the Court's task is to predict what the state supreme court would do.
> Our review of the district court's interpretation of state law is de novo.

483 F.3d at 665-66 (internal citations and quotation marks omitted).

[18]"The Supreme Court of New Mexico's adoption of uniform jury instructions proposed
by standing committees of the Court establishes a presumption that the instructions are correct
statements of law."   Back v. ConocoPhillps Co., 2012 WL 6846397, at *15 n.2 (D.N.M. Aug.
31, 2012)(Browning, J.)(citing State v. Wilson, 1994-NMSC-009, ¶ 5, 867 P.2d 1175, 1178).

alleged that State Farm "was acting in a fiduciary relationship with the Plaintiff and that by its actions as alleged aforesaid, breached such relationship."  1976-NMCA-076, ¶ 41, 553 P.2d at 710.  The Court of Appeals of New Mexico concluded that the plaintiff did not sufficiently allege a fiduciary relationship and recognized that, even if it did, such a relationship results in a duty imposed upon the insurer to deal in good faith with its insured.  See 1976-NMCA-076, ¶¶ 42-46, 553 P.2d at 710.  In reaching this conclusion, the Court of Appeals of New Mexico first explained: "The fact that State Farm insured plaintiff did not create a fiduciary relationship." 1976-NMCA-076, ¶¶ 42-46, 553 P.2d at 710.  According to the Court of Appeals of New Mexico, "[s]omething more than the fact of the insurance relationship is required before a fiduciary relationship results."  1976-NMCA-076, ¶ 42, 553 P.2d at 710.  It then stated:

> When a liability insurance company, by the terms of its policy, obtains the power to determine whether an offer of compromise of a claim should be accepted or rejected, it creates a fiduciary relationship between it and its insured. American Fidelity & Casualty Co. v. G. A. Nichols Co., 173 F.2d 830 (10th Cir. 1949).  When an insurance company acts on behalf of the insured in the conduct of litigation and the settlement of claims, it assumes a fiduciary relationship. American Fidelity & Cas. Co. v. All American Bus Lines, 179 F.2d 7 (10th Cir. 1949).  When an insurance company advises its insured that it is not necessary to employ counsel to collect the insurance or secure benefits under the policy and invites the insured to communicate with the company, it assumes a duty not to deceive its insured.  Stark v. Equitable Life Assur. Soc., 205 Minn. 138, 285 N.W. 466 (1939).

> Each of the three cases cited in the preceding paragraph involved the relationship of the insurer and insured.  Those cases refer to a fiduciary relationship.  What resulted from this relationship?  It was the duty of the insurer to deal in good faith with its insured.  That duty exists in New Mexico.  American Employers' Insurance Co. v. Crawford, supra.

1976-NMCA-076, ¶ 43, 553 P.2d at 710 (emphasis added).  In conclusion, the Court of Appeals of New Mexico explained that "[b]reach of this good faith duty was held to state a claim for relief in item (b) above" and that "[t]he claim of a fiduciary relationship fails to state any

additional claim upon which relief can be granted."  1976-NMCA-076, ¶¶ 45-46, 553 P.2d at 710.

The Court concludes that a plain reading of the Court of Appeals of New Mexico's decision in Chavez v. Chenoweth supports the committee commentary to N.M.R.A., Civ. UJI 13-1708's statement: "While the relationship between insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to performance of an insurance contract, no cause of action, apart from the action for bad faith, exists for the breach of this duty."  N.M.R.A., Civ. UJI 13-1708 cmt.  "[I]n cases where jurisdiction rests on diversity of citizenship, federal courts, under the doctrine of Erie Railroad v. Tomkins . . . must follow the decision of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  Stoner v. New York Life Insurance Co., 311 U.S. at 467 (emphasis added).  Here, there is an "absence of convincing evidence" that the Supreme Court of New Mexico would decide this issue differently.  Stoner v. New York Life Insurance Co., 311 U.S. at 467.  Indeed, in 1999, in Allsup's Convenience Stores, Inc. v. The North River Insurance Co., the Supreme Court of New Mexico favorably cited Chavez v. Chenoweth as holding that the "relationship between insurer and insured imposes fiduciary obligation on insurer to deal with the insured in good faith in matters pertaining to the performance of the insurance contract."  1999-NMSC-006, ¶ 37, 976 P.2d at 15. This citation supports the Court's conclusion that, consistent with Chavez v. Chenoweth and N.M.R.A., Civ. UJI 13-1708, the Supreme Court of New Mexico would recognize that the relationship between an insurer and insured imposes a fiduciary obligation on the insurer to deal with the insured in good faith in matters pertaining to performance of an insurance contract, but

that it would not recognize a cause of action, independent of bad faith, for a breach of a fiduciary duty.

The Court therefore concludes that regardless whether the Plaintiffs have sufficiently alleged that a fiduciary relationship exists under the facts of this case, in light of the Court of Appeals of New Mexico's decision in Chavez v. Chenoweth, the Supreme Court of New Mexico's decision in Allsup's Convenience Stores, Inc. v. The North River Insurance Co., and the committee commentary to N.M.R.A., Civ. UJI 13-1708, the Court must dismiss the Plaintiffs' breach of fiduciary duty claim (Count V) because New Mexico does not recognize a cause of action for breach of a fiduciary duty in the insurance context independent of a bad faith claim.  See Wade v. Emcasco Insurance Co., 483 F.3d at 665-66 (instructing federal courts to seek guidance from decisions rendered by lower courts, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law).  Accordingly, the Court will dismiss the breach of fiduciary duty claim (Count V).  While this does not preclude the Plaintiffs from filing a motion seeking leave to amend their Complaint at a later date, the Court notes that such amendment would likely be futile given that the Court is concluding that New Mexico does not recognize a cause of action for breach of fiduciary duty in this context.

## IV.    THE COURT WILL DISMISS THE PLAINTIFFS' NEGLIGENCE AND PROFESSIONAL NEGLIGENCE CLAIM (COUNT VI).

The Hartford asks the Court to dismiss the Plaintiffs' negligence and professional negligence claim (Count VI), because New Mexico does not recognize a cause of action for negligence in the insurer-insured context that arises out of their contractual relationship.  See Motion at 7.  The Hartford maintains that the Uniform Jury Instructions governing bad-faith

claims in New Mexico indicate that there is no cause of action for ordinary negligence in the insurance context.  See Motion at 7.

The Court has examined New Mexico's Uniform Jury Instructions and the committee commentary governing bad-faith claims.  First, the introduction to the bad-faith jury instruction states: "The absence of an instruction from this Chapter or Chapter 8 does not imply the unavailability of a claim or defense, merely that New Mexico case law is not sufficiently developed to justify the instruction."  N.M.R.A., Civ. UJI Ch. 17 intro.  Chapter 17 then sets forth three jury instructions for bad faith: (i) "bad faith failure to pay a first party claim," N.M.R.A., Civ. UJI 13-1702; (ii) "bad faith failure to defend," N.M.R.A., Civ. UJI 13-1703; and (iii) "bad faith failure to settle," N.M.R.A., Civ. UJI 13-1704.  Neither the jury instructions nor the committee commentary for "bad faith failure to pay a first party claim," N.M.R.A., Civ. UJI 13-1702, or "bad faith failure to defend," N.M.R.A., Civ. UJI 13-1703, discuss or mention whether New Mexico recognizes a cause of action for the negligent failure to pay a first party claim or the negligent failure to defend.  The committee commentary to the jury instruction for "bad faith failure to settle," N.M.R.A., Civ. UJI 13-1704, however, discusses negligence:

> There is no cause of action in New Mexico for the negligent failure to settle a claim of liability against the insured.  Liability is based upon a breach of the obligation of good faith implied in the insurance contract.  Ambassador Insurance Co. v. St. Paul Fire & Marine Ins. Co., 102 N.M. 28, 690 P.2d 1022 (1984).

N.M.R.A., Civ. UJI 13-1704 cmt.

A careful reading of New Mexico's Uniform Jury Instructions governing bad-faith claims, therefore, does not support The Hartford's assertion that "a review of the uniform jury instructions governing bad faith cases in New Mexico reveals there is no *cause of action* for ordinary negligence in the insurance context."  Motion at 7 (emphasis in Motion).  Rather, New

Mexico's Uniform Jury Instructions indicate that there is no cause of action for "negligent failure to settle a claim of liability against the insured." N.M.R.A., Civ. UJI 13-1704 cmt.

> The absence of an instruction [on negligent failure to pay a first party claim or the negligent failure to defend or any other theory of negligence, however,] does not imply the unavailability of a claim or defense, merely that New Mexico case law is not sufficiently developed to justify the instruction.

N.M.R.A., Civ. UJI Ch. 17 intro. In sum, the Court concludes that New Mexico's Uniform Jury Instructions indicate that there is no cause of action for "negligent failure to settle a claim of liability against the insured," but leave unanswered the question whether a plaintiff can maintain a cause of action for negligence or professional negligence against an insurance company based upon some other theory of negligence -- such as negligent failure to pay or negligent failure to defend. The Court must therefore examine New Mexico case law to determine whether the Plaintiffs can maintain a cause of action for negligence against The Hartford.[19]

The Hartford insists that the Supreme Court of New Mexico expressly refused to recognize a separate cause of action for negligence in Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co., where, the Supreme Court of New Mexico stated:

> However, under the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith. 17 Am. Jur. 2d *Contracts* § 256 (1964). New Mexico recognizes this duty of good faith between insurer and insured. *See State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *State Farm Fire and Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App. 1984); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App. 1976); *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972). This implied covenant is an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties. 17 Am.Jur.2d *Contracts* § 255 (1964). To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance.

---

[19]See supra note 17.

Reply at 7 (quoting in part <u>Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>, 1984-NMSC-107, ¶ 11, 690 P.2d at 1024-25).   As stated above, the committee commentary to the jury instruction on "bad faith failure to settle" cites to <u>Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.</u> for the proposition that "[t]here is no cause of action in New Mexico for the negligent failure to settle a claim of liability against the insured."   N.M.R.A., Civ. UJI 13-1704 cmt.

In <u>Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.</u>, plaintiff Ambassador Insurance Company, as excess insurance carrier for Memorial General Hospital of Las Cruces, New Mexico -- the insured -- brought suit against defendant St. Paul Fire & Marine Insurance Company in the United States District Court for the District of New Mexico.   <u>See</u> 1984-NMSC-107, ¶ 1, 690 P.2d at 1022.   "Ambassador alleged that St. Paul negligently and in bad faith failed to settle a medical malpractice claim brought against the insured within the primary policy limits, despite an offer to do so."   1984-NMSC-107, ¶ 1, 690 P.2d at 1022. Ambassador Insurance was liable for any amounts over the primary policy limits as the excess insurer.   <u>See</u> 1984-NMSC-107, ¶ 1, 690 P.2d at 1022.   The district court "dismissed Ambassadors' claim for negligent failure to settle on the grounds that New Mexico did not recognize such a cause of action."   1984-NMSC-107, ¶ 2, 690 P.2d at 1023.   On the bad-faith failure to settle claim, a jury returned a verdict in St. Paul's favor.   <u>See</u> 1984-NMSC-107, ¶ 2, 690 P.2d at 1023.

Ambassador Insurance appealed the dismissal of its negligence claim and challenged the jury instructions on its bad-faith claim.   <u>See</u> 1984-NMSC-107, ¶ 2, 690 P.2d at 1023.   With respect to the negligence claim, the Tenth Circuit certified the following question to the Supreme Court of New Mexico: "Whether New Mexico recognizes negligent failure to settle as a cause of

action?"  1984-NMSC-107, ¶ 3, 690 P.2d at 1023.   The Supreme Court of New Mexico explained that the federal district court interpreted <u>American Employers' Insurance Company v. Crawford</u>, 1975-NMSC-020, 533 P.2d 1203, as holding that New Mexico courts do not recognize a claim for negligent failure to settle.  <u>See</u> 1984-NMSC-107, ¶ 4, 690 P.2d at 1023. The Supreme Court of New Mexico concluded that, in <u>American Employers' Insurance Company v. Crawford</u>, it "did not directly address the issue of whether New Mexico recognizes a cause of action for negligent failure to settle."  1984-NMSC-107, ¶ 4, 690 P.2d at 1023. Rather, the Supreme Court of New Mexico explained that, in that case, it found that, "since there was no coverage under the policy, the insurer had no duty to pay the judgment against its insured and therefore could not be held accountable for its failure to settle the claim."  1984-NMSC-107, ¶ 4, 690 P.2d at 1023.  The Supreme Court of New Mexico further stated:

> However, while referring to the clause as sounding in tort or contract, Crawford did discuss bad faith by the insurance company in dealing with its insured.  Dicta in Crawford indicates that New Mexico will interpret the duties between insured and insurer as based in contract rather than tort.
>
>> Clearly, the company violated no contractual obligation to Crawford, and *we fail to understand the source or nature of any duty recognized in the law of tort which the company owed or breached.*

<u>Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>, 1984-NMSC-107, ¶ 5, 690 P.2d at 1023 (quoting <u>American Employers' Insurance Company v. Crawford</u>, 1975-NMSC-020, ¶ 12, 533 P.2d at 1208)(emphasis in <u>Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>).  According to the Supreme Court of New Mexico, the federal district court relied on the above quote from <u>American Employers' Insurance Company v. Crawford</u> to conclude that New Mexico does not recognize the cause of action of negligent failure to settle.  <u>See</u> 1984-NMSC-107, ¶ 6, 690 P.2d at 1023.  The Supreme Court of New Mexico explained, however, that the <u>American Employers'</u>

Insurance Company v. Crawford decision did not conclusively determine the issue, but rather "stressed the difficulty of conceptualizing such a cause of action, and the above quoted statement is strong evidence of how the *Crawford* court would have decided the question of negligent failure to settle had it been necessary for a determination of the case."  1984-NMSC-107, ¶ 6, 690 P.2d at 1023.

The Supreme Court of New Mexico then explained that, based on this language from American Employers' Insurance Company v. Crawford, in light of its reading of other New Mexico cases that have viewed the duty between the insurer and insured as one of good faith, and its review of the various jurisdictions that had already decided the issue, New Mexico does not recognize the cause of action of negligent failure to settle.  See 1984-NMSC-107, ¶ 7, 690 P.2d at 1023.  The Supreme Court of New Mexico then articulated its reasoning:

> Negligence has been defined as follows:
>
> > If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure to do so is negligence * * *.
>
> *Dumas v. Hartford Accident and Indemnity Co.*, 94 N.H. 484, 489, 56 A.2d 57, 60 (1947)(citation omitted).  In cases such as the one before us, where the harm to the insured is that he or she will be found liable in excess of the policy limits if the case proceeds to trial, the only precaution available to the ordinary and prudent man to avoid such harm is to settle the claim within policy limits because inherent in the trial process is the risk that judgment will go against one party or the other.  The possibility always exists that the insured's case, even though seemingly sound and grounded on solid case law, will fail.  If it were otherwise, all cases would be settled or dismissed during the pretrial stages and trials would become unnecessary.  Under the theory of negligent failure to settle, the risk to the insured of going to trial would always be "sufficiently serious" to merit automatic settlement within policy limits.
>
> Merely because there is the ever present *chance* that the insured's case will fail at trial and a judgment will be entered in excess of policy limits, recognition of this cause of action could be read as requiring the insurer to settle every case despite an honest belief that the settlement offer is much greater than the amount that would ultimately be awarded as damages.  The New York Court

of Appeals addressed the problem of recognizing negligent failure to settle as a cause of action and stated:

> Even when there was little likelihood of recovery, many reasonable persons would think it wise to settle rather than to take any chance with a jury.  In most of the accident cases, disputed questions of fact arise.  Is the insurance company to determine at its peril whether reasonable-minded men would believe the plaintiff's witnesses in preference to its own?  Again, even on conceded facts, as frequently happens, a serious question of law arises as to the nature or extent of liability, if any.  Is a jury to say that the insurance company was guilty of negligence in choosing to try out such a question in the courts rather than to settle?  These questions suggest the wisdom of adhering to the contract of insurance which the parties have made.  If the insurance company is to be obligated to make a settlement under any given circumstances, it must be a matter to be dealt with between the insured and the insurer, or else regulated by the Legislature.

*Best Building Co. v. Employers' Liability Assurance Corp.*, 247 N.Y. 451, 455-56, 160 N.E. 911, 912-13 (1928).

It is the policy of this state to favor settlement whenever feasible.  *Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.), *cert. denie*d, 98 N.M. 336, 648 P.2d 794 (1982).  However, it is not our policy to *require* that settlements be made where no duty to settle exists.  The relationship between insurer and insured is a contractual one.  The only duty imposed upon the insurer in the contract is the duty to *defend* the suit against the insured. It is left to the judgment of the insurer whether to settle the case or not.

However, under the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith. 17 Am. Jur. 2d *Contracts* § 256 (1964).  New Mexico recognizes this duty of good faith between insurer and insured.  *See State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *State Farm Fire and Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App. 1984); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App. 1976); *Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673 (Ct.App.), *cert. denied*, 84 N.M. 219, 501 P.2d 663 (1972).  This implied covenant is an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties.   17 Am.Jur.2d *Contracts* § 255 (1964).  To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance.  However, because the insurer has, by its insurance contract, taken over the duty to defend the case against the insured:

[A]nd because the contact prohibits the insured from settling, or negotiating for settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest would be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But, as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated.

*Radcliffe v. Franklin National Insurance Co.*, 208 Or. 1, 33, 298 P.2d 1002, 1017 (1956) quoting *Hilker v. Western Automobile Insurance Co.*, 204 Wis. 1, 14, 235 N.W. 413, 415 (1931).

Thus, when failure to settle the claim stems from a failure to properly *investigate* the claim or to become familiar with the applicable law, etc., then this is negligence in defending the suit (a duty expressly imposed upon the insurer under the insurance contract) and is strong evidence of bad faith in failing to settle. Here, basic standards of competency can be imposed, and the insurer is charged with knowledge of the duty owed to its insured. In this sense, such negligence becomes an *element* tending to prove bad faith, but not a cause of action in and of itself. However, "where an insurer acts honestly and in good faith on adequate information, it should not be held liable for excess liability due to its failure to reach a settlement." *Brisco v. Meritplan Insurance Co.*, 132 Ariz. 72, 74, 643 P.2d 1042, 1044 (Ct. App. 1982).

Based on the above analysis and giving full weight to the statements found in *Crawford* and other New Mexico cases referring to the duty between insurer and insured as one of good faith, we determine that the district court was correct in its conclusion that the cause of action of negligent failure to settle was not and would not be recognized in New Mexico.

1984-NMSC-107, ¶¶ 8-13, 690 P.2d at 1023-25.

The Court concludes that, in Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co., the Supreme Court of New Mexico held that the cause of action of negligent failure to settle is not and would not be recognized in New Mexico.  See 1984-NMSC-107, ¶¶ 8-13, 690 P.2d at 1023-25.  The Plaintiffs do not appear to be asserting a claim against The Hartford for negligent failure to settle, but to the extent that they are, the Court dismisses such a claim.  With respect to whether the Plaintiffs can maintain a cause of action against The Hartford based upon some other theory of negligence, the Court must predict how the Supreme Court of New Mexico would rule.  See Guidance Endodontics, LLC v. Dentsply Intern., Inc., 708 F. Supp. 2d at 1257.  Here, construing the Plaintiffs' Complaint in their favor, the Plaintiffs assert that The Hartford was negligent in the sense that it: (i) failed to send workers' compensation policy renewals to the Plaintiffs' correct address, causing the Plaintiffs' workers' compensation policy to be cancelled, see Complaint ¶ 18, at 3; id. ¶ 20, at 3; id. ¶ 113, at 16; Response at 8; (ii) failed to follow up with a telephone call or letter to the correct mailing address advising the Plaintiffs of the need to renew the workers' compensation policy before its lapse, see Complaint ¶ 19, at 3; (iii) failed to advise the Plaintiffs that they needed to buy workers compensation insurance when discussions occurred regarding the policy cancellation, see Complaint ¶¶ 24-26, at 4; id. ¶ 114, at 16; Response at 8; (iv) failed to defend and indemnify the Plaintiffs in the Rael Lawsuit, see Complaint ¶¶ 40-41, at 6; and (v) provided helpful legal advice to the Rael Plaintiffs during the adjustment of their claim, see Complaint ¶¶ 35-67, at 5-10; Response at 8.

The Court concludes that, under Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.'s reasoning, the Supreme Court of New Mexico would rule that the Plaintiffs cannot maintain a cause of action for negligence against The Hartford based upon any of these theories of negligence.  In Ambassador Insurance Co. v. St. Paul Fire & Marine Ins. Co., the

Supreme Court of New Mexico explained that "[t]he relationship between insurer and insured is a contractual one," 1984-NMSC-107, ¶ 10, 690 P.2d at 1024, and noted that "[t]he <u>only duty imposed upon the insurer in the contract is the duty to defend suit against the insured</u>." 1984-NMSC-107, ¶ 10, 690 P.2d at 1024 (emphasis added).  It explained that New Mexico recognizes that, "under an insurance contract, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith."  1984-NMSC-107, ¶ 11, 690 P.2d at 1024.  Importantly, the Supreme Court of New Mexico noted:

> This implied covenant is an <u>exception to the general rule</u> that only those obligations contained in the written agreement will be imposed upon the parties. <u>To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance</u>.

1984-NMSC-107, ¶ 11, 690 P.2d at 1024 (emphasis added).  The Court concludes that in light of this broad language, the Supreme Court of New Mexico would find that the Plaintiffs cannot maintain a negligence cause of action against The Hartford for its: (i) failure to send workers' compensation policy renewals to the correct address, causing the Plaintiffs' workers' compensation policy to be cancelled; (ii) failure to follow up with a telephone call or letter to the correct mailing address advising the Plaintiffs of their need to renew the workers' compensation policy before its lapse; (iii) failure to advise the Plaintiffs that they needed to buy workers compensation insurance when discussions occurred regarding the policy cancellation; (iv) failure to defend the Plaintiffs in the Rael Lawsuit; or (v) provision of helpful legal advice to the Rael Plaintiffs during the adjustment of their claim.

The Court agrees with The Hartford that none of the cases that the Plaintiffs cite involve the assertion of a negligence claim against an insurer.  <u>See</u> Reply at 7.  The Plaintiffs cite to <u>Allsup's Convenience Stores, Inc. v. The North River Insurance Co.</u>, but that case did not

involve a negligence claim, but rather, addressed bad faith and an insurer's obligations under the

duty of good faith and fair dealing:

> North River also attacks the jury's finding that it breached the covenant of good faith and fair dealing by failing to disclose to Allsup's the continuing inadequate claims handling by Alexsis.  North River argues there is no case law specifically imposing such a duty and points to the fact that the Memorandum of Agreement provided that Alexsis was to act as a "liaison" between North River and Allsup's in these matters.  The issue is whether and when an insurer has a good faith duty to disclose information to its insured.  North River cites *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 701, 858 P.2d 66, 77 (1993), for the proposition that the implied covenant of good faith never requires a party to disclose material information.  That case involved disclosure whereby a mineral operator would have had to subordinate its legitimate interest in the enterprise to that of royalty holders.  Such a case, where a party would have to "bend over backwards" in the course of disclosing information, is not covered by the implied covenant of good faith and fair dealing.  This does not mean that a party to the covenant is freed from making all types of disclosure in all cases.  "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement."  *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438, 872 P.2d 852, 856 (1994).  We see no reason in law or logic why this duty should always be a negative one; if good faith and fair dealing require it, there can be an affirmative duty to act in order to prevent the denial of the other party's rights under the agreement.  Such an aspect of the covenant of good faith and fair dealing is commonly found in insurance cases.  *See Weber v. State Farm Mut. Auto. Ins. Co.*, 873 F. Supp. 201, 208 (S.D. Iowa 1994)(duty to disclose coverage); *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 634 A.2d 74, 86 (1993)(obligation to disclose unprotected risks); *Mark Patterson v. Bowie*, 237 A.D.2d 184, 654 N.Y.S.2d 769, 771 (1997)(claim premised on duty to disclose information that might cause a prospective insured to forego insurance by keeping clear of the risk properly dismissed as repetitive of cause of action for breach of covenant); *Miller v. Keystone Ins. Co.*, 402 Pa.Super. 213, 586 A.2d 936, 941 (1991)(duty to inform of potential for adversarial relationship if insurer knows insured is relying on its advice and counsel), reversed on other grounds by 535 Pa. 531, 636 A.2d 1109 (1994)).

Allsup's Convenience Stores, Inc. v. The North River Ins. Co., 1999-NMSC-006, ¶ 35, 976 P.2d

at 14.  In sum, like The Hartford, the Court has been unable to find any New Mexico case in

which an insurance carrier was defending against any tort other than a breach of the implied

covenant of good faith and fair dealing.  See Tr. at 53:9-20 (Keller).  The Court also agrees with

The Hartford that, "[w]hile Grasshopper's assertions *may* provide a basis for their claim for bad faith, their allegations do not -- and cannot -- state a claim for negligence upon which relief can be granted."   Reply at 7 (emphasis in original).   Accordingly, the Court will dismiss the Plaintiffs' ordinary negligence claim set forth in Count VI of the Complaint.

The full heading to Count VI is named: "Negligence & Professional Negligence." Complaint at 16.   The Court has already concluded that, under New Mexico law, the Plaintiffs cannot maintain a cause of action for ordinary negligence against The Hartford.   To the extent that the Plaintiffs assert a cause of action for "professional negligence," the Court will also dismiss that claim.   New Mexico recognizes a cause of action for professional malpractice.   See Buke, LLC v. Cross Country Auto Sales, LLC, 2014-NMCA-078, ¶ 53, 331 P.3d 942, 955.   The Supreme Court of New Mexico has recognized that a professional malpractice claim can be asserted against physicians and surgeons, see Cervantes v. Forbis, 1964-NMSC-022, 389 P.2d 210, chiropractors, see Mascarenas v. Gonzales, 1972-NMCA-062, 497 P.2d 751, lawyers, see Sanders v. Smith, 1972-NMCA-016, 496 P.2d 1102, and architects and accountants, see Buke, LLC v. Cross Country Auto Sales, LLC, 2014-NMCA-078, 331 P.3d 942.   While New Mexico has recognized that, under certain circumstances, a plaintiff can assert a professional malpractice or fiduciary duty claim against an insurance agent or broker, see Montano v. Allstate Indemnity, 211 F.3d 1278 (10th Cir. 2000), the Court has been unable to find a New Mexico case concluding that a professional malpractice claim can be asserted against an insurance company such as The Hartford.   This is logical given that insurance agents or brokers -- like doctors, lawyers, architects, and accountants -- are part of a "profession."   Allowing a plaintiff to assert a professional malpractice claim against entities or individuals that cannot properly be classified as belonging to a particular profession would be unworkable and would render the phrase

- 69 -

"professional malpractice" meaningless.  Insurance companies most likely want to, for example, send renewal notices to their insureds' correct mailing address for business purposes.  For the Court to start imposing additional duties on them to do so where an insurance contract governing their obligations, duties, and rights, exists becomes tricky.  Likely for that reason, in this context, New Mexico law has only recognized the implied covenant of fair dealing, which is "an exception to the general rule that only those obligations contained in the written agreement will be imposed upon the parties."  Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 1984-NMSC-107, ¶ 11, 690 P.2d at 1024-25.  In sum, the Court will dismiss the Plaintiffs' negligence and professional negligence claim (Count VI).  While this dismissal does not bar the Plaintiffs from filing a motion seeking leave to amend their Complaint at a future date, and attaching a proposed amended complaint, the Court notes that such amendment would likely be futile.

**IT IS ORDERED** that Hartford's Motion to Dismiss Counts V and VI of Plaintiffs' Amended Complaint, filed April 30, 2015 (Doc. 4), is granted.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Harry Jesse Jacobus, III
Law Office of George Dave Giddens, P.C.
Albuquerque, New Mexico

  _Attorney for the Plaintiff_

Steven J. Knight
Chamberlain, Hrdlicka, White, Wiliams & Aughtry
Houston, Texas

--and--

Courtenay L. Keller
Riley, Shane & Keller, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendant*